441 So.2d 469 (1983)
Eva J. Wise SHERMAN, Plaintiff/Defendant in Reconvention-Appellant,
v.
David Bruce SHERMAN, Defendant/Plaintiff in Reconvention-Appellee.
No. 15822-CA.
Court of Appeal of Louisiana, Second Circuit.
November 29, 1983.
*470 Love, Rigby, Dehan, Love & McDaniel by Truly W. McDaniel, Shreveport, for plaintiff/defendant in reconvention-appellant.
Marshall Blackwell, Monroe, for defendant/plaintiff in reconvention-appellee.
Before MARVIN, JASPER E. JONES and FRED W. JONES, JJ.
FRED W. JONES, Jr., Judge.
Plaintiff mother appealed that portion of a divorce judgment awarding permanent child custody to the defendant father.
For the reasons hereinafter explained, we affirm.
Eva Wise Sherman and David Sherman were married in February 1976 and established their matrimonial domicile in Ouachita Parish. Two children [one of whom is deceased] were born of the marriage.
The parties physically separated in April 1981. Mrs. Sherman moved with her three year old son to the home of her parents. On August 7,1981 she sued her husband for a legal separation. In connection with a rule filed therein, plaintiff was awarded temporary custody of her minor child on September 8, 1981.
On December 2, 1981 defendant filed an answer and reconventional demand, seeking a legal separation on his behalf. On May 7, 1982 defendant amended and supplemented his reconventional demand to allege adultery on the part of his wife and asked for a divorce. He did not request custody of his minor son at that time.
By petition filed on September 30, 1982 Mrs. Sherman sued her husband for a divorce on the ground of having lived separate and apart for one year. The defendant answered and reconvened for a divorce, again alleging acts of adultery by his wife. Also included in this pleading was a rule for custody of the minor child. A hearing on the rule was had on January 6, 1983.
According to the evidence adduced at the described hearing, after moving from the matrimonial domicile Mrs. Sherman lived at the home of her parents with her son, Jonathan, until the latter part of August 1981 when she obtained employment and secured an apartment in Monroe. Later they moved to another apartment in the same city. Then, in August 1982 Mrs. Sherman moved with her child to Arcadia into a mobile home co-owned by her with Lonnie Waits, an Arcadia businessman.
The critical issue posed at the hearing was whether Mrs. Sherman and Waits were engaged in an illicit relationship which was detrimental to the welfare of the minor child, Jonathan.
The 26 year old Mrs. Sherman candidly admitted frequently sleeping with the 33 year old Waits [whom she first met in August 1981], but denied that this ever occurred in the presence of her minor son. Waits often spent the weekend with Mrs. Sherman in her Monroe apartment after their initial meeting. This arrangement extended over a period of some six months. After Mrs. Sherman's move with her son into the mobile home in Arcadia, that arrangement continued, but on a more consistent basis. Waits had quite a bit of his furniture in the jointly owned trailer, kept clothing there, and the two usually ate together. His motor vehicle was often parked in front of the dwelling. However, Mrs. Sherman denied that they were living together, explaining that she did not cook all of his meals and did not wash Waits' clothing. She stated that her paramour "stays a good bit with his mother."
Asked if she planned to marry Waits, Mrs. Sherman replied: "I'm seeing Mr. Waits but I haven't given him an answer as far as if I'm going to marry him." In response to a query as to whether she was still sleeping with Waits [at time of trial], Mrs. Sherman stated that she was. Questioned as to how often, she answered: "I really don't know."
*471 In view of his wife's admission of the illicit relationship with Waits, Sherman's evidence at the hearing consisted primarily of the testimony of a Monroe neighbor that she had on several occasions seen Mrs. Sherman physically mistreat her child and that the youngster had been left with a mentally incompetent babysitter.
In rebuttal, Mrs. Sherman presented the testimony of other Monroe residents who attested to her good qualities as a mother who properly cared for her child. Also called on behalf of the plaintiff was a worker at the church-operated child care center in Arcadia [attended in the mornings by Jonathan] who stated that the youngster appeared to be a normal, healthy child who showed no signs of being neglected.
Mrs. Sherman also testified that she operated an ice cream parlor in a building owned by Waits but that, since she had helpers, this did not interfere with her caring for Jonathan when he was not at the child care center.
In written reasons for judgment on the rule, the trial judge stated:
"The mother admits her illicit relationship with Lonnie Waits, however, she contends she engages in no sexual activity in the presence of the child. No one contends sex activity took place with the child present, but the child admittedly sees his mother in bed with a man not her husband nor his father. Such conduct is detrimental to the welfare of the child."
Judgment on the rule, placing Jonathan in the custody of his father pendente lite, was signed on February 11, 1983. Without a further hearing, this custody award was confirmed in a judgment awarding Mrs. Sherman a divorce, signed on February 24, 1983.
In this appeal from that portion of the described judgment awarding child custody to Sherman, Mrs. Sherman argues that the record is devoid of any evidence that her illicit conduct with Waits has been detrimental to the welfare of her minor child.
In Bagents v. Bagents, 419 So.2d 460 (La.1982) the trial court had denied a mother custody of her five year old daughter. During the trial the mother admitted living with her paramour whom she planned to marry as soon as he secured a divorce. Affirming the action of the trial court, our supreme court commented:
"The principal consideration in every child custody case is the best interest and welfare of the child. Past misconduct and moral unfitness, demonstrated in this case by the mother's open concubinage in the home with the child, is a valid basis for determining the present suitability of a parent."
Despite Mrs. Sherman's denial that she and Waits were "living together", the record evidence leads to the conclusion that their arrangement amounted to concubinage. Not having a separate residence, the mobile home in question appeared for all practical purposes to be a dwelling which Waits shared with Mrs. Sherman. This is in marked contrast to Cleeton v. Cleeton, 383 So.2d 1231 (La.1979) where the paramour of the mother who was awarded custody maintained a separate residence and only occasionally stayed overnight with Mrs. Cleeton.
We also note Mrs. Sherman's admission that her illicit arrangement with Waits was continuing even at the time of the trial.
The trial court is vested with broad discretion in deciding child custody cases. Because of that tribunal's better opportunity to evaluate witnesses, and taking into account the proper allocation of trial and appellate functions, great deference is accorded to the decision of the trial court. Cleeton, supra, p. 462. After carefully examining this record, we cannot say that the trial judge abused his discretion in awarding custody of the minor child to his father, based upon the "best interest" test. As in Bagents, the mother's disregard for the observance of recognized moral norms, demonstrated by her living in concubinage with Waits, is a valid criterion for determining her unsuitability as a parent. Since a child learns by example, his mother's conduct must inevitably affect Jonathan adversely.
*472 For these reasons, we affirm the lower court judgment, at plaintiff-appellant's cost.