631 So.2d 45 (1994)
Paul David McKINLEY, Appellee,
v.
Wendy Winans McKINLEY, Appellant.
No. 25365-CA.
Court of Appeal of Louisiana, Second Circuit.
January 19, 1994.
Rehearing Denied February 17, 1994.
*46 McKeithen & McKeithen by Anita D. McKeithen, for appellant.
Cooper & Hales by Thomas E. Cooper, Jr., for appellee.
Before MARVIN, LINDSAY and WILLIAMS, JJ.
WILLIAMS, Judge.
Wendy McKinley appeals a trial court judgment awarding Paul McKinley primary custody of Summer and Brittany McKinley, minor children born of the marriage, and primary custody of Justin McKinley, a child born prior to the marriage. For the reasons expressed below, we affirm.

FACTS
Paul McKinley and Wendy McKinley were married on March 19, 1988. Wendy gave *47 birth to Justin McKinley on February 2, 1988, approximately six weeks prior to the marriage. Wendy and Paul knew that Paul was not Justin's father because Wendy conceived Justin before she and Paul began dating. Nonetheless, shortly after their marriage, Wendy and Paul signed a notarized statement attesting to the fact that Paul was Justin's father. The couple used this statement to have Paul's name recorded on Justin's birth certificate as his father.
Two children were born after Paul and Wendy were married: Summer McKinley on March 29, 1989 and Brittany McKinley on January 8, 1991.
On May 30, 1991, Paul filed a petition for divorce seeking sole custody of the three children or, in the alternative, primary custody under a joint custody plan. On June 17, 1991, the trial court awarded the parties joint custody of the children pending the hearing on the custody rule.
The following year, on February 6, 1992, Paul's motion for a judgment of divorce was granted. Fourteen days later, because of allegations by the mother concerning ongoing instances of sexual abuse of Justin, the trial court transferred custody of the children to the Department of Health and Human Services until all parties could submit to polygraph examinations.
On March 27, 1992, the trial court awarded Paul the temporary custody of the three children, subject to weekend visitation by Wendy. The trial court also enjoined Wendy's mother, Joy Ross, from having any contact with the children.
On April 10, 1992, Wendy filed an answer and reconventional demand alleging that Justin was neither the biological nor legal child of Paul. She sought to terminate Paul's parental rights to Justin. She also requested joint custody of Summer and Brittany, and that she be named as the domiciliary parent.
After a trial on the merits, the court ordered blood tests of the parties and the three children. It also ordered the release of all birth certificate information by the Bureau of Vital Statistics.
After taking the matter under advisement, the trial court awarded domiciliary custody of the children to Paul, with weekend visitation privileges to Wendy.
On September 15, 1992, Wendy filed a motion for a new trial alleging that Paul had remarried and that the character of his new wife as well as her ability to care for the three children should be assessed. A partial new trial was granted. At the close of the evidence, the trial court maintained its previous judgment on the issue of custody. Wendy appeals.

DISCUSSION
Wendy contends the trial court erred in awarding primary custody of Summer and Brittany to Paul without evidence that it is in their best interest to have him as their primary custodian.
The primary consideration in rendering a child custody determination is always the best interest of the child. LSA-C.C. Art. 131; Timmons v. Timmons, 605 So.2d 1162 (La.App. 2d Cir.1992). When determining the best interest of a child in custody cases, there must be a weighing and balancing of factors favoring or opposing custody in respective competing parents on the basis of evidence presented in each particular case. Cooper v. Cooper, 579 So.2d 1159 (La.App. 2d Cir.1991).
The trial court's determination is to be given great weight and will be overturned only when there is a clear abuse of discretion. Thompson v. Thompson, 532 So.2d 101 (La.1988); Timmons, supra.
In the instant case, the trial judge was faced with a difficult decision. In his reasons for judgment, he noted that neither Wendy nor Paul are model parents. He also found that Wendy has given no real indication that she has changed her lifestyle, which has not been conducive to rearing small children.
The record reveals that both Wendy and Paul have initiated physical fights with each other. On one occasion since the court proceedings were initiated, Wendy physically attacked Paul when he picked up the children for a scheduled visit because his pregnant nineteen-year-old friend was with him. At *48 some time during the marriage, Paul punched a hole in a wall when Wendy told him that she was having an affair. Wendy also testified that on one occasion Paul had slapped her. Paul responded that he only slapped Wendy after she provoked him by spitting in his face and hitting him on the back of his head with an oil filter wrench.
Wendy never had meaningful employment until she was ordered by the trial court to obtain employment and establish a home. She began working in Baton Rouge and currently lives in her grandfather's trailer, which is located behind his house. Wendy testified that if she were awarded custody of the children, she would make a twenty-six mile round-trip commute to Denham Springs to leave the children with a babysitter before reporting to work at 8:00 a.m.
Since Paul is employed as a truck driver and only makes local deliveries, he can be at home with the children at night. He lives in a trailer approximately two miles from his parents' home. His trailer has three bedrooms and a large yard for the children to play. The children have their own bedrooms. Audrey McKinley, Paul's mother, helps him to take care of the children and to take the children to and from the babysitter. Since Mrs. McKinley is a teacher, she will be available to care for the children during their summer school vacation.
Dr. Bobby Stephenson, a psychologist, conducted psychological evaluations of the parties and of the minor child, Justin. He then referred Justin to Phyllis Taylor, a licensed counselor and play therapist, for play therapy. According to the trial court, Dr. Stephenson concluded that Paul was the proper parent to be awarded custody.[1]
The trial court's decision to award joint custody of the children to parties, with Paul designated as domiciliary parent, was made after all the evidence was diligently reviewed. There was conflicting testimony presented by the lay witnesses and the trial court made findings of fact based upon the testimony of witnesses it found to be the most credible. From the evidence presented at trial, including the testimony of the expert witness, this court can find no "abuse of discretion" in the trial court's decisions.
It is reasonable for the trial court to make its findings based upon witnesses which it found more credible and convincing. The trial court is vested with broad discretion in deciding child custody cases. Because of the tribunal's better opportunity to evaluate witnesses, and taking into account the proper allocation of trial and appellate functions, great deference is accorded to the decision of the court. Windham v. Windham, 616 So.2d 276 (La.App. 2d Cir.1993); Sherman v. Sherman, 441 So.2d 469 (La.App. 2d Cir.1983). Under the facts and circumstances of this case, there is no abuse of discretion or clearly wrongful finding by the trial court, and thus no reversible error.
Wendy also contends the trial court erred by awarding primary custody of Justin to Paul because Paul is not Justin's biological or legal father. She argues the record is devoid of clear and convincing evidence that awarding her primary custody would be detrimental to Justin and is not in his best interest.
Wendy's assertion that Paul is not Justin's biological or legal father is correct. Paul and Wendy testified that they began dating after Wendy had conceived Justin. Blood tests ordered by the court confirmed that Paul is not Justin's biological father.
Only a father may formally acknowledge an illegitimate child by having his name placed on the child's birth certificate. LSA-C.C. Art. 203; Jordan v. Taylor, 568 So.2d 1097 (La.App. 4th Cir.1990). Thus, the McKinleys' act of having Paul's name recorded on Justin's birth certificate is without legal effect. Therefore, for purposes of this custody dispute, Paul must be considered a nonparent.
Parents enjoy a paramount right of custody and may be deprived of that right *49 only for compelling reasons, which must be expressly determined and supported by convincing evidence. Merritt v. Merritt, 550 So.2d 882 (La.App. 2d Cir.1989). LSA-C.C. Art. 131(B) governs custody disputes between a parent and a nonparent. It establishes a two pronged test that must be met before a parent is denied custody of his or her child and the child is placed in the custody of the nonparent: the trial court must determine that an award of custody to the parent would be detrimental to the child and the award of custody to a nonparent is required to serve the best interests of the child. LSA-C.C. Art. 131(B); Matter of Stewart, 602 So.2d 212 (La.App. 3d Cir.1992).
In addition to parental unfitness, inability to provide a home and abandonment of parental rights, the statutory term "detrimental to the child" includes other circumstances that would cause the child to suffer positive and substantial harm. Merritt v. Merritt, supra.
In its reasons for judgment, the trial court stated that awarding Wendy custody of Justin would be detrimental to him because he would be separated from his sisters and because Wendy's lifestyle was not conducive to rearing small children.
Wendy claims that Ms. Taylor, a licensed counselor, did not testify that Paul was the proper parent to be awarded custody.
The record shows that Ms. Taylor was asked by Paul's attorney where was the best location for Justin. Ms. Taylor replied that Justin was most relaxed when he was in foster care but since he was there for only a short time, his comfort may have been due to his respite from the controversy arising from Paul and Wendy's divorce. She stated that after the foster home, Justin was more comfortable with Paul rather than Wendy. As previously stated, Dr. Stephenson opined that Paul was the proper parent to be awarded custody.
If Justin were the only child in this custody dispute, the law would require us to award primary custody to Wendy. Generally, in cases where this court has awarded custody to a nonparent, the parent has demonstrated severe misconduct, such as a history of ongoing drug abuse and vociferous acts of adultery. See e.g. Bolding v. Bolding, 532 So.2d 1199 (La.App. 2d Cir.1988); Thomas v. Thomas, 519 So.2d 357 (La.App. 2d Cir.1988); Gras v. Gras, 489 So.2d 1283 (La.App. 2d Cir.1986), writ denied, 493 So.2d 1222 (La.1986).
Custody disputes between parents and nonparents typically involve a single child or full-blooded siblings. This case differs because the custody of half-siblings must also be considered.
Every child custody case must be viewed within its own peculiar set of facts and the relationships involved, with the paramount goal of reaching a decision that is in the best interest of the child. Appellate courts should be reluctant to interfere with custody plans ordered by the trial courts in the exercise of their discretion. Windham v. Windham, supra; Hickman v. Hickman, 459 So.2d 140 (La.App. 2d Cir.1984). Great weight is given to the trial court's decision which will not be overturned absent a showing of an abuse of discretion.
The evidence presented at trial shows that Paul has been a father to Justin since Justin's birth. Since the parties wanted Paul to become Justin's legal father without undergoing the expenses of adoption, they had Paul recorded as the father on Justin's birth certificate. Although this acknowledgment did not give Paul any rights to Justin because he is not Justin's biological father, this act does show the McKinleys' intent to have Paul legally recognized as Justin's father. Further, Justin has been raised with his halfsisters and has only known Paul as his father.
Moreover, Ms. Taylor testified that Justin exhibited anger toward his mother and maternal grandmother. She further testified that there was a possibility of sexual abuse of Justin, but she did not feel Paul or his family members were the perpetrators. Ms. Taylor testified that while Justin does not display anger or fearfulness with his father, he has mixed feelings about his mother. She stated Justin sometimes shows anger and fear of his mother and sometimes he wants to be with *50 her. She felt Justin was more comfortable and relaxed when he was in his father's care.
The trial court was not clearly wrong in awarding Paul primary custody of Summer and Brittany, and therefore, Paul shall continue as their domiciliary parent. If Wendy were awarded primary custody of Justin, then he would be separated from his halfsisters, which could cause positive and substantial harm to him. Separation is a hard choice and is not frequently approved. Meredith v. Meredith, 521 So.2d 793 (La.App. 2d Cir.1988). Thus, under the peculiar facts of this case, the trial court is not clearly wrong in concluding that separating Justin from his two younger half-sisters would be detrimental to him and that is would be in the children's best interest to be in Paul's custody.

CONCLUSION
On this record, we cannot say the trial court abused its discretion in awarding Paul McKinley domiciliary custody of the three children. Accordingly, the judgment of the trial court is affirmed. Costs are assessed to the appellant.
AFFIRMED.

APPLICATION FOR REHEARING
Before MARVIN, LINDSAY, HIGHTOWER, STEWART and WILLIAMS, JJ.
Rehearing denied.
NOTES
[1] Dr. Stephenson's reports of his psychological evaluations do not appear in the record. Nor did he testify at trial. However, in his written reasons for judgment, the trial judge states that Dr. Stephenson felt that Paul was the proper parent to be awarded custody. No objection has been made by the parties to this finding by the trial court.