679 So.2d 493 (1996)
Carolyn Browhaw LEWIS, Plaintiff-Appellee,
v.
Ernest Reed ADAMS, Defendant-Appellant.
No. 28496-CA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1996.
Rehearing Denied September 19, 1996.
*494 Paul Henry Kidd, Jr., Monroe, for Appellant.
Hunter, Scott, Blue & Johnson by Willie Hunter, Jr., Monroe, for Appellee.
Before SEXTON, HIGHTOWER and CARAWAY, JJ.
CARAWAY, Judge.
Ernest Reed Adams appeals a judgment awarding him custody of his minor daughter, Porsha Trashenna Adams. Mr. Adams asserts the trial court erred in rejecting his claim for damages for a wrongfully issued temporary restraining order (TRO) by his daughter's maternal aunt, Carolyn Browhaw Lewis. Mr. Adams also seeks rescission of the judgment insofar as it awarded child support to Mrs. Lewis for the period of time pending the outcome of her failed custody proceeding. Because the allegations presented by Mrs. Lewis in support of her petition for the TRO were not attempted to be proven, we hereby award damages to Mr. Ernest Reed Adams for the wrongful issuance of the TRO. We also reverse the award of child support and vacate the portion of the judgment requiring Mr. Adams to deposit the social security benefits into an account to be administered by the court.

FACTUAL AND PROCEDURAL HISTORY
Following the separation and divorce of her parents in 1988, Porsha Adams, then approximately four years old, resided with her mother, Barbara Ann Browhaw Adams *495 (Barbara). Although Porsha's overnight or extended visits with Mr. Adams were infrequent, Barbara apparently encouraged both Porsha and Mr. Adams to maintain a close relationship with one another. There is no evidence that Barbara feared for Porsha's safety during her visits with Mr. Adams.
Following his divorce from Porsha's mother, Mr. Adams purchased Porsha a television, a computer and two bicycles. Although he often failed to timely pay his court ordered child support, Mr. Adams always managed to pay the past due support by the end of the year.
Barbara maintained a close relationship with her sister, Carolyn Lewis, the plaintiff in this suit. In 1994, when Barbara was suffering from terminal cancer, Porsha and her half sister, Tara (Barbara's other daughter), resided primarily with Mrs. Lewis and her husband. Immediately prior to her death which occurred on December 8, 1994, Barbara executed a will memorializing her desire that "... joint custody of my minor daughter, Porsha Trashenna Adams, be shared by my sisters, Beatrice Hutson and Carolyn Browhaw Lewis." Mrs. Lewis' petition alleged that during Barbara's final four-day hospitalization, Porsha was left in her custody. Following Barbara's funeral, Porsha continued living with Mrs. Lewis. Mrs. Lewis alleged that Mr. Adams agreed at that time to allow her to raise Porsha; however, Mr. Adams denies this contention. Following a relatively minor misunderstanding concerning when Mr. Adams would return Porsha to the Lewis' home and an attempt by Mr. Adams to pick Porsha up from school, Mrs. Lewis filed the petition for custody and sought a TRO.
The petition was filed on December 16, 1994, and alleged, among other grounds, that Mr. Adams was a "known drug user," with a history of sporadic employment who had provided minimal support for Porsha since the divorce. The petition, verified by Mrs. Lewis, alleged that irreparable injury or damage would result to Porsha if Mr. Adams took physical custody of her and requested the issuance of a TRO without bond, prohibiting Mr. Adams from taking custody of Porsha, harassing or molesting her or going near her school. Attached to the petition was a "Joint Custody Proposal" signed by Mrs. Lewis' attorney that seemingly contradicts the gravity of the irreparable harm alleged in support of the TRO by stating:
Ernest Reed Adams shall have the physical custody of the minor child at any time as agreed upon by the parties
Neither party shall attempt or conduct any attempt, directly or indirectly, by any artifice or subterfuge whatsoever, to estrange the child from the other party, or to injure or impair the mutual love and affection of the child.
At all times both parties shall encourage and foster in the child the sincere respect and affection for both parties and shall not hamper the natural development of the child's love and respect for the other.
The trial court issued the requested TRO on December 16, 1994, prohibiting Mr. Adams from taking physical custody of Porsha and further prohibiting him from going near Porsha's school or the Lewis residence. The trial judge, nevertheless altered the proposed TRO by inserting as a handwritten addition to the order an allowance for Mr. Adam's exercise of "reasonable visitation" with Porsha. In contravention to the mandate of La.C.C.P. art. 3606 which requires the trial court to set the hearing for the preliminary injunction at the "earliest possible time" the trial court ordered Mr. Adams to show cause on February 13, 1995, why undefined "Protective Orders" should not issue against him. Mr. Adams did not object to this dilatory setting nor did Mr. Adams attempt to exercise his rights pursuant to La.C.C.P. art. 3607 to dissolve the TRO which he now claims was wrongfully issued.
In his answer to the plaintiff's petition filed on February 13, 1995, Mr. Adams denied the allegations of drug abuse, requested the dissolution of the TRO, and sought damages for its wrongful issuance. On February 13 and 17, 1995, a hearing regarding the merits of the parties claims for custody of Porsha occurred. The trial court did not issue a ruling until May 8, 1995, granting custody to Mr. Adams, effective June 3, 1995, subject to certain visitation rights of Mrs. Lewis and Tara. The trial court's judgment also contained *496 an award of child support in the amount of $1,750.00 to Mrs. Lewis for her care of the child since December 1994, and ordered Mr. Adams to set aside a portion of Porsha's social security benefits for her education in an interest bearing account from which withdrawals could only be made with court approval.
Mr. Adams appealed raising seven assignments of error which we consolidate and summarize as follows:
(i) The trial court failed to assess damages and attorney's fees for the wrongful issuance of a temporary restraining order;
(ii) The trial court erred in ordering a surviving parent to pay child support to a non-parent in that Mrs. Lewis' pleadings did not request payment for child support and Mrs. Lewis' interim custody of Porsha was obtained through an improvidently granted temporary restraining order;
(iii) The trial court erred in ordering a joint custody plan and giving Mrs. Lewis excessive visitation; and
(iv) The trial court erred in ordering appellant, sua sponte, to set aside a portion of the federal social security benefits for Porsha' education.

LAW

Injunctive Relief
A temporary restraining order shall be granted without notice when it clearly appears from the specific facts shown by a verified petition or by supporting affidavit that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or his attorney can be heard in opposition and the applicant's attorney certifies to the court in writing the efforts which have been made to give notice to the opposing party or the reasons supporting his claim that notice should not be required. La.C.C.P. art. 3603. The 1985 comment to art. 3603 provides that the second portion of the statute was added to reduce the practice of issuing ex parte restraining orders without notice of any kind. With such notice, an adversary proceeding might be prompted and a summary proceeding heard by the court without the need for the issuance of the ex parte TRO. Article 3603 requires a verified petition and supporting affidavits from the plaintiff and other witnesses attesting to the validity of the underlying facts regarding the impending irreparable injury. The 1985 amendment requires the attorney representing the party seeking a TRO to certify that efforts have been made to notify the individual against whom the TRO will issue.
Absent consent of the party against whom the order is directed or extension by the court, a TRO may not exceed ten days. La. C.C.P. art. 3604. When a TRO is granted, the application for a preliminary injunction shall be assigned for hearing at the earliest possible time. If the party who obtains a TRO does not proceed with the application for a preliminary injunction when it comes on for hearing, then the court is required to dissolve the TRO. La.C.C.P. art. 3606. This dissolution provision demonstrates the legislature's concern that a TRO be granted only as an extraordinary measure.[1]
The court may allow damages for the wrongful issuance of a temporary restraining order on a motion to dissolve or on a reconventional demand and attorney's fees for the services rendered in connection with the dissolution of a TRO may be awarded. La. C.C.P. art. 3608. However, attorney fees may not be awarded if the TRO expires prior to a hearing on the issue of dissolution. United Gas Pipe Line Co. v. Caldwell, 590 So.2d 724 (La.App.3d Cir.1991). Finally, a TRO should not be issued unless the applicant furnishes security in the amount fixed by the court, except where security is dispensed with by law. The security shall indemnify the person wrongfully restrained or enjoined for the payment of costs incurred and damages sustained. La.C.C.P. art. 3610.

Child Custody
It is well settled in Louisiana that a parent has a paramount right to custody of his children. See La.C.C. art. 133 (former C.C. art. 146, as amended by 1982 La. Acts *497 No. 307); Wood v. Beard, 290 So.2d 675 (La.1974); McKinley v. McKinley, 631 So.2d 45 (La.App.2d Cir.1994). Before a non-parent may obtain custody of a child it must be proven that substantial harm to the child would result by an award of custody to the parent. La.C.C. art. 133; [Cf. Humphrey v. Humphrey, 614 So.2d 837 (La.App.2d Cir. 1993), decided prior to the 1994 amendment to art. 133 but requiring proof that an award of custody would (1) be detrimental to the child and (2) an award to the non-parent is in the best interest of the child.] The best interest of the child test, standing alone, does not deprive a parent of custody in a contest with a non-parent. Jones v. Jones, 415 So.2d 300 (La.App.2d Cir.1982). The non-parent is required to prove that substantial harm will result to the child if custody is awarded to the parent.

DISCUSSION
Following his separation and divorce from Barbara, Mr. Adams had previously enjoyed a judicially recognized right of visitation with his daughter.[2] At the time of the issuance of the TRO immediately following the death of his former wife, Mr. Adams was the party who under the law possessed the paramount right to the custody of his daughter. Based upon our review of Barbara's will which did not attempt to appoint a tutor for Porsha upon Barbara's death, Mr. Adams was entitled as natural tutor to fulfill any duties regarding the tutorship of Porsha's estate and the record indicates that he did in fact qualify as tutor in a proceeding instituted during the pendency of this custody dispute.
In the face of these rights of the father, Mrs. Lewis sought and obtained a TRO alleging that Porsha had been in her physical custody for the four final days of Barbara's hospitalization prior to her death and further alleging the following:
Petitioner states that defendant is a known drug user, has a history of sporadic employment, he is irresponsible, and has provided minimal support at times for the minor since he and the deceased, Barbara Ann Browhaw Adams, were granted a legal separation on or about June 15, 1988.
Upon the actual trial of the custody dispute, no evidence whatsoever of Mr. Adam's alleged drug use was presented. Mr. Adams' relationship with his daughter prior to Barbara's death was in no manner shown to have been damaging to Porsha. The trial court, therefore, recognized Mr. Adams' paramount right of custody since no showing of "substantial harm" under Civil Code article 133 was made.
Another disturbing aspect to the issuance of the TRO in this case is the failure of Mrs. Lewis' counsel to have made the certificate regarding advance notice to Mr. Adams required by La.C.C.P. art. 3603(A)(2). The requirement for the certificate of the attorney was specifically added to the provisions for the TRO in 1985 in an effort to possibly avoid the need for the ex parte employment of judicial power. The record reflects that Mr. Adams attended his former wife's funeral, visited in Mrs. Lewis' home on at least one occasion following the funeral, and spoke to Mrs. Lewis and Tara by telephone. Mrs. Lewis saw Mr. Adams during a conference at Porsha's school immediately prior to the filing of suit and admitted that she could reach Mr. Adams by leaving a message with his mother. Mrs. Lewis' counsel's failure to have complied with this notice provision under these circumstances is a significant violation of the process for injunctive relief.
Finally, the facts concerning Mrs. Lewis' actual custody of Porsha following Barbara's death and Mr. Adams' tolerance of that situation belie any contention that "immediate and irreparable injury" to Porsha could have occurred within the time period necessary for the assignment of a hearing for a preliminary injunction which could have occurred within two to ten days after service of Mrs. Lewis' suit. La.C.C.P. art. 3602. Though the signing of the TRO occurred on the afternoon of December 16, 1994, out of the alleged fear *498 that at five o'clock on that day Mr. Adams was going to confront Mrs. Lewis to take custody of Porsha, no significant confrontation over the child's custody had occurred prior to that day, and no such confrontation did in fact occur. Upon being advised of Mrs. Lewis' legal action (which could have instead been an action for a preliminary injunction), Mr. Adams did not attempt to physically usurp her custody of Porsha. In fact, prior to the hearing on the custody dispute which occurred in February, 1995, Mr. Adams was allowed, at the suggestion of Mrs. Lewis, visitation rights with Porsha which included overnight stays at his residence.
Under the above circumstances, we find that the TRO was wrongfully issued, depriving Mr. Adams of his right to the care and custody of his daughter. The process employed by Mrs. Lewis, ignoring the mandates for prior notice and an expedited hearing for a preliminary injunction, was particularly abusive in this case. The ex parte order for the TRO also contained the additional order for the February hearing for "Protective Orders" as opposed to an order timely setting a preliminary injunction hearing, thus setting in place a process sanctioned by the orders presented ex parte to the court which led to the deprivation of Mr. Adams' rights as parent for almost six months. Though we find as discussed below that the TRO expired after ten days and that Mr. Adams had available procedural rights to expedite a preliminary injunction hearing, this action abused the injunctive procedural process to the detriment of Mr. Adams' parental right. We, therefore, award Mr. Adams damages of $3,000. The failure of the trial court to have set a bond at the time of issuance of the TRO does not prevent this award.
The allowance for attorney's fees under La.C.C.P. art. 3608, however, is inapplicable in this case due to Mr. Adams' failure to timely dissolve the TRO by contesting its merits within ten days of its issuance. After ten days the TRO expired in accordance with La.C.C.P. art. 3604. The allowance of the award of attorney's fees is only made for "services rendered in connection with the dissolution" of the TRO.
Mrs. Lewis' petition for custody did not request payment of child support. Cf. La.C.C.P. 861. No evidence was presented to establish the basis for the amount awarded. No legal authority is cited by Mrs. Lewis in support of this award. Most significantly, since we have determined that Mrs. Lewis improperly utilized injunctive relief to wrest away from Mr. Adams his right to custody, we find that the equitable remedy fashioned by the court in this instance was inappropriate.
The trial court additionally ordered, sua sponte, Mr. Adams to set aside a portion of Porsha's social security benefits into an interest bearing account for her future educational needs subject to the approval of future withdrawals by the court. No authority for this ruling was given by the court. This order which does not pertain to Mrs. Lewis' custody suit was apparently issued by the trial court in connection with the pending tutorship proceedings. This issue was therefore inappropriate for consideration as a part of this suit and the judgment regarding this matter is reversed. We note however based upon our cursory review of the federal statutes and regulations that Mr. Adams may receive the child beneficiary payments as "representative payee" to administer the funds for the child's use and benefit in accordance with federal law. 42 U.S.C. 402 and 405(j); 20 C.F.R. § 404.2040.
Finally, Mr. Adams assigns as error the trial court's award of temporary joint custody allowing lengthy periods of custody in favor of Mrs. Lewis and Tara which extended until the summer of 1996. This ruling which has now apparently been carried out is moot. We note that any such visitation rights continuing in favor of Tara is within the discretion of the court under La.R.S. 9:344(C).

CONCLUSION
The rulings of the trial court against appellant, Ernest Reed Adams, are hereby REVERSED *499 in part and AFFIRMED in part. Costs of this appeal are assessed to appellee.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, HIGHTOWER, GASKINS and CARAWAY, JJ.
Rehearing denied.
NOTES
[1] The exception found in La.C.C.P. art. 3604 C allowing a TRO to remain in force for 30 days under the Protection from Family Violence Act is inapplicable under the facts of this case.
[2] It was unclear from the record the precise nature of the custodial arrangement between Barbara and Mr. Adams; whether joint custody or custody solely to Barbara. Nevertheless, the record indicates that Porsha had had periodic visitation, including occasional overnight stays, with her father prior to her mother's death in 1994.