749 So.2d 835 (1999)
Chris RAMPHREY, Plaintiff-Appellee,
v.
Julie Nichols RAMPHREY, Defendant-Appellant.
No. 32,560-CA.
Court of Appeal of Louisiana, Second Circuit.
December 8, 1999.
*836 Donald L. Kneipp, Monroe, Counsel for Appellant.
Scott E. McElroy, Bastrop, Counsel for Appellee.
Before BROWN, WILLIAMS and STEWART, JJ.
WILLIAMS, Judge.
The defendant, Julie Nichols Ramphrey, appeals a trial court judgment awarding the plaintiff, Chris Ramphrey, sole custody of the parties' minor child. The judgment provides the defendant with visitation on alternating weekends and holidays, and a total of six weeks in the summer. For the following reasons, we reverse and remand.

FACTS
The parties, Chris and Julie Ramphrey, were married on January 6, 1996, and established their matrimonial domicile in Morehouse Parish, Louisiana. One child, Chelsay Lynn Ramphrey, was born of the marriage on December 8, 1996. The couple physically separated for the final time on August 6, 1998, when Mrs. Ramphrey left the marital home. She traveled with her daughter and another man to south Louisiana, where they stayed together in a motel room for approximately one week.
On August 14, 1998, Mr. Ramphrey filed a petition for divorce, seeking sole custody of the minor child and alleging that Mrs. Ramphrey often went out at night and that she lacked the maturity to care for the child's needs. Mrs. Ramphrey answered and filed a reconventional demand, alleging that Mr. Ramphrey's drug dependency problem and his history of unemployment made him unfit to have custody of their minor child. While awaiting a hearing on the issue of custody, the parties agreed to temporarily share physical custody of the child on a weekly basis. At the time of the hearing, a judgment of divorce had not been entered.
During the marriage, the parties resided in a mobile home in Bastrop, Louisiana. Mrs. Ramphrey's grandmother, Marguerite Golden, apparently had purchased the mobile home for her granddaughter's use. Mrs. Golden continued to make the monthly loan payments after the couple moved into the trailer, and she also paid a significant portion of the parties' living expenses.
During the last two weeks before their final physical separation, the parties and the minor child lived with Mr. Ramphrey's parents, Malcolm and Becky Ramphrey, and their 11-year old son. After the parties physically separated, Mr. Ramphrey lived with another woman in her home for several months before moving back with his parents. At the hearing, Mr. Ramphrey testified that he would continue to live with his parents until such time as he could afford his own residence.
In September 1998, Mrs. Ramphrey met and began a relationship with John Carter. Approximately one month later, she moved with the child into Carter's home. The child has her own bedroom when she stays with her mother and Carter, who is divorced. Carter is the father of an eight-year-old daughter, who is not residing with him, but who periodically stays in the *837 home for overnight visits. Carter pays the household expenses.
After a hearing, the trial judge, in his oral reasons for judgment, expressed concern about the instability of Mrs. Ramphrey's living arrangements, her lack of definitive marriage plans, and the attachment that Chelsay may develop to Carter and his daughter. The judge stated that this living arrangement would be "very harmful" to the minor child if she developed a close relationship with another individual that would end when the mother's situation changed. The trial court awarded Mr. Ramphrey sole custody, subject to visitation by Mrs. Ramphrey on alternating weekends and holidays, and a total of six weeks during the summer.
The trial court ordered that during either party's period of physical custody of the minor child, overnight guests of the opposite sex, the use of any controlled substance, and cigarette smoking were prohibited in the household. Subsequently, the trial court rendered judgment incorporating these provisions, with the exception of the prohibition on cigarette smoking. Mrs. Ramphrey's motion for new trial was denied by the trial court. Mrs. Ramphrey appeals the judgment.

DISCUSSION
Mrs. Ramphrey contends the trial court erred in awarding Mr. Ramphrey sole custody of the minor child. Mrs. Ramphrey argues that the evidence presented failed to rebut the presumption in favor of joint custody and that she should have been designated the domiciliary parent.
The primary consideration in making a child custody determination is always the best interest of the child. LSA-C.C. art. 131; Powell v. Powell, 28,911 (La.App.2d Cir.12/11/96), 684 So.2d 1084; Lundin v. Lundin, 563 So.2d 1273 (La.App. 1st Cir. 1990). Pursuant to LSA-C.C. art. 134, in determining the child's best interest, the court shall consider all relevant factors, which may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The factors listed in Article 134 are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court. O'Brien v. O'Brien, 30,001 (La.App.2d Cir.12/10/97), 704 So.2d 933. When determining the best interest of the child, there must be a weighing and balancing of factors favoring or opposing custody in respective competing parents on the basis of the evidence presented in each case. McKinley v. *838 McKinley, 25,365 (La.App.2d Cir.1/19/94), 631 So.2d 45. A trial court's determination of child custody is entitled to great weight and will not be disturbed on appeal absent a clear abuse of discretion. Powell v. Powell, supra.
In the present case, evidence was adduced concerning the capacities of each parent. Mr. Ramphrey testified that he dropped out of school after the seventh grade and has not attempted to obtain a GED. Mr. Ramphrey stated that during the last two years of his marriage he had worked only "half" of the time. On the date of the hearing, he had been employed at his current job with Roof Masters for six months. Mr. Ramphrey testified that he had moved back with his parents because he was not earning enough to live on his own, but expected to earn more money in the future with steadier work.
Mr. Ramphrey acknowledged that during the marriage, his wife was primarily responsible for cleaning the home and caring for the child. Mr. Ramphrey stated that his mother currently participates in the daily care of the minor child by dropping off and picking up the child at day care, and by cooking and doing the laundry for him and his daughter.
Concerning his financial support for the child, Mr. Ramphrey testified that he buys diapers and "helps" with buying groceries, but did not provide the amount of these costs. He acknowledged that while the parties were together, Mrs. Golden paid the loan for the mobile home in which he lived, provided money for groceries and paid the electricity and water bills. In his brief, Mr. Ramphrey criticizes his wife for obtaining money from her grandmother and for accepting assistance from Carter. However, the record demonstrates that during the marriage, Mr. Ramphrey willingly accepted the financial support of Mrs. Golden while he paid little or nothing toward the household expenses.
At the hearing, Mrs. Ramphrey testified that during those weeks of her physical custody of the child, she was staying with her boyfriend, John Carter, with whom she continued to live at the time. Mrs. Ramphrey indicated that she planned to remain with Carter, but told the court that she could live in the mobile home if she desired. Although Mrs. Ramphrey acknowledged that living with Carter outside of marriage could be considered morally wrong, she did not believe that this situation presented any potential harm for Chelsay. Mrs. Ramphrey stated that she and Carter planned to marry after her divorce.
During their periods of physical custody, both parties admittedly have continued to go out in the evening to see friends, leaving the child in the care of others. Malcolm Ramphrey testified that he and his wife, Becky, watch the child when their son goes out with friends at least twice each week. The testimony also shows that on one occasion, Mrs. Ramphrey went out to celebrate her birthday and left Chelsay in the care of a 14-year-old girl. Mrs. Ramphrey had picked up the girl after school without the permission of her mother, who became concerned about the girl's absence. A search ensued and the girl was found at Mrs. Ramphrey's house alone with Chelsay. The exact whereabouts of Mrs. Ramphrey were unknown. Malcolm and Becky Ramphrey were called to come pick up Chelsay.
Mr. Ramphrey's parents testified that he and Chelsay were welcome to stay at their home as long as necessary and that they would continue to assist their son in caring for the child. Their home has three bedrooms, so Chelsay does not have her own room, but sleeps in her own bed located in the grandparents' bedroom. The grandparents smoke cigarettes, and the testimony suggests that Chelsay may have allergy or sinus problems which are aggravated by the cigarette smoke. Although Mrs. Ramphrey also smokes cigarettes, she prohibited smoking around the child and the paternal grandparents stated they would not smoke in the house.
*839 In his brief, Mr. Ramphrey contends that his wife's testimony indicating that Carter may act as a "father figure" in the child's life means that she is unwilling to encourage a continuing relationship between Chelsay and her father. However, Mr. Ramphrey acknowledged that during his period of physical custody, he once attempted to "get back" at his wife by preventing her from picking up their child to attend a Christmas play. In addition, Mr. Ramphrey admitted that he pled guilty to the offense of simple battery as a result of shoving Mrs. Ramphrey during an argument. Such behavior certainly does not indicate a willingness by Mr. Ramphrey to facilitate a continuing relationship between the child and her mother.
During the custody hearing, both parties expressed feelings of love for their daughter. However, considering the testimony as a whole, the evidence suggests that both parents are flawed and each has behaved in a manner that could be viewed as detrimental to Chelsay's well-being. Both parties have participated in extramarital relationships to which Chelsay was exposed, have gone out at night to see friends while exercising physical custody, and have used marijuana in the past. Finally, there have been instances where the parties have failed to cooperate and communicate with one another in a manner that would foster the other's parental relationship with Chelsay.
Generally, in the absence of an agreement, the court shall award custody to the parents jointly, unless custody in one parent is shown by clear and convincing evidence to serve the best interest of the child. LSA-C.C. art. 132. After reviewing the entire record, we conclude that Mr. Ramphrey failed to establish by clear and convincing evidence that awarding him sole custody would be in the child's best interest, as required by the provisions of Article 132. Thus, the evidence presented was insufficient to overcome the legislative preference in favor of joint custody. Consequently, the trial court abused its discretion in awarding sole custody of the minor child to Mr. Ramphrey. Therefore, the judgment will be reversed and the parents shall be awarded joint custody of the minor child. The case will be remanded for the formulation of a joint custody implementation order pursuant to LSA-R.S. 9:335. By this decision, we do not preclude the district court on remand from naming the father as the domiciliary parent, if such a designation is deemed to be in the child's best interest after careful consideration of all relevant factors enumerated in Article 134.
LSA-R.S. 9:335 provides that when joint custody is decreed, the court shall render a joint custody implementation order allocating periods during which each parent shall have physical custody of the child, so that the child is assured of frequent and continuing contact with both parents. When the court finds that a joint custody decree is in the best interest of the child, an equal sharing of physical custody is not necessarily required. Substantial time, rather than strict equality of time, is mandated by the legislative scheme providing for joint custody of children.
O'Brien, supra.
In remanding the case for the formulation of a joint custody plan pursuant to LSA-R.S. 9:335, we pretermit a discussion of Mrs. Ramphrey's remaining assignment of error regarding the extent of her visitation rights. Upon review, we note that the visitation schedule incorporated in the trial court's judgment is generally consistent with the goal of joint custody plans to provide the non-domiciliary parent with frequent and continuing contact with the child. See O'Brien, supra; Pahal v. Pahal, 606 So.2d 1359 (La.App. 2d Cir.1992).

CONCLUSION
For the foregoing reasons, the trial court's judgment is reversed. We hereby award joint custody of the minor child, Chelsay Ramphrey, to the parents, *840 Christopher and Julie Nichols Ramphrey. The case is remanded to the trial court for the formulation of a joint custody plan and the entry of an implementation order. Costs of this appeal are assessed one-half to the appellant, Julie Nichols Ramphrey, and one-half to the appellee, Christopher Ramphrey.
REVERSED AND REMANDED.