605 So.2d 1162 (1992)
Marilyn Mason TIMMONS, Plaintiff/Appellee,
v.
William D. TIMMONS, Defendant/Appellant.
No. 23884-CA.
Court of Appeal of Louisiana, Second Circuit.
August 19, 1992.
Rehearing Denied September 17, 1992.
Writ Denied November 30, 1992.
*1163 Kitchens, Benton, Kitchens, & Warren by Paul E. Kitchens, Minden, for plaintiff/appellee.
Foster & Foster by Mark O. Foster, Minden, for defendant/appellant.
Before SEXTON, HIGHTOWER and BROWN, JJ.
SEXTON, Judge.
Defendant William Timmons appeals the district court's award of domiciliary custody of the two children of his marriage to plaintiff Marilyn Mason Timmons, as well as its calculation of his child support obligation. We amend and affirm as amended.
The parties were married in 1982 and two children were born of that marriage. At the time that Mrs. Timmons filed the instant suit seeking a divorce and custody of the children in April 1991, the parties' son was six years old and their daughter was three years old.[1] Shortly after filing her original petition, Mrs. Timmons filed an amended petition seeking an ex parte award of custody until a judicial determination of custody could be made at a later date. The district court awarded her temporary custody, subject to reasonable visitation by Mr. Timmons.
*1164 Mr. Timmons filed an answer and reconventional demand wherein he alleged that it would be in the best interests of the children for him to be the domiciliary parent, for the following nonexclusive reasons:
immediately prior to the parties' separation, he was providing much of the primary care to the children;
Mrs. Timmons was undergoing treatment, therapy, and counseling for substance abuse; and
since the parties' separation, Mrs. Timmons had failed to provide a stable home life for the children and had failed to provide care, time, and attention to their needs.
He also sought support from her for the benefit of the children.
Mrs. Timmons filed a supplemental and amending petition wherein she also sought domiciliary custody of the children, as well as child support.
At the original hearing, the parties agreed to take evidence solely on the issue of custody and also agreed that support would be determined following the decision on domiciliary custody.
Mrs. Timmons called as witnesses two counselors who had counseled with her in the past, as well as having briefly met the children on the morning of the hearing. When Mrs. Timmons attempted to elicit their opinions on the best interest of the children regarding domiciliary custody, Mr. Timmons objected. The court overruled the objection and indicated that the objection would be considered in terms of the weight to be given to their testimony.
Mrs. Timmons also presented the testimony of Glenda Nation, a recovering alcoholic. Her testimony concerned Mrs. Timmons' attendance at Alcoholics Anonymous meetings for the purpose of demonstrating her dedication to recovery, as well as to explain her frequent absences in the evening, which required the children to be left with a babysitter.
Finally, Mrs. Timmons presented the testimony of Brenda Hinton, who was the children's regular babysitter. The main thrust of her testimony concerned the number of hours the children were left with her, even when Mrs. Timmons was not at work.
Mr. Timmons presented three witnesses. In addition to his own testimony and that of Mrs. Timmons as an adverse witness, he presented that of Rose Giddings, his sister and a supervisory employee at Mrs. Timmons' place of employment. She testified about the hours that Mrs. Timmons was at work during certain periods. This testimony was relevant to the babysitter's testimony regarding the hours the children were not with their mother.
Mr. Timmons testified in support of the allegations contained in his petition and provided details regarding his wife's mental condition, substance abuse, and general disregard of the children toward the latter days of their marriage, as well as shortly after the separation.
Mrs. Timmons testified about her condition and her dedication to recovery. She explained many of her absences as part of the recovery process involving AA meetings, counseling, and follow-up therapy. In addition, she testified that she was required to spend a considerable amount of time gathering furniture and seeking fulltime employment after she left the matrimonial domicile.
Following the hearing, the district court awarded domiciliary custody of the children to Mrs. Timmons, with generous visitation by Mr. Timmons. The parties were requested to negotiate support, but when that failed, evidence on that issue was taken.
After taking the matter under advisement, the district court ordered Mr. Timmons to pay Mrs. Timmons $603.19 per month for the benefit of the children. It disregarded his argument that his financial obligations to the child from his previous marriage should be taken into account and further added the cost of insurance premiums to his obligation.
Mr. Timmons now appeals and suggests that we should reverse and render on the custody issue, but that if custody is affirmed, we should modify the child support obligation.

*1165 CHILD CUSTODY
The primary consideration in rendering a child custody determination is always the best interest of the children. LSA-C.C. Art. 131. In determining the best interests of a child in custody cases, there must be a weighing and balancing of factors favoring or opposing custody in respective competing parents on the basis of evidence presented in each particular case. Cooper v. Cooper, 579 So.2d 1159 (La.App. 2d Cir.1991).
In child custody cases, the decision of the trial court is to be given great weight and will be overturned only where there is a clear abuse of discretion. Thompson v. Thompson, 532 So.2d 101 (La.1988); Lee v. Davis, 579 So.2d 1130 (La.App. 2d Cir.1991).
In the instant case, the district court was faced with a close question. Both the plaintiff and defendant presented valid reasons in support of their requests for domiciliary custody, while both were confronted with evidence which supported giving custody of the children to the other party.
In her favor, Mrs. Timmons was able to show that she was the primary care provider for the children until a few months before the parties separated. In addition, despite an adverse situation following the parties' separation, she was able to provide an adequate home for the children, as well as adequate day-care for them while she worked and pursued recovery and therapy for her considerable problems. On the other hand, there was substantial evidence of plaintiff's problems with substance abuse, depression, and an innominate "personality disorder." She spent nearly a month away from the children while undergoing inpatient treatment for her problems, as well as substantial amounts of time away from them after returning home from treatment. Additionally, although there was evidence that she spent considerable blocks of time, sometimes hours, away from the children when she was not at work, Mrs. Timmons explained that she was required to gather furniture to adequately furnish her new residence after she and the defendant separated, as well as to pursue more meaningful and financially rewarding employment.
Mr. Timmons showed that he still lived in the home where the children had lived prior to the separation and that he was gainfully employed with a regular schedule. He also showed that, during his wife's inpatient treatment and in the months between her return from treatment and the parties' separation, he provided much of the children's care because plaintiff had abdicated much of her responsibility in that regard. However, there was also evidence that Mr. Timmons had only become seriously involved in the care of the children after his wife's problems required her to enter the inpatient program previously mentioned. In addition, there was evidence that Mr. Timmons had only reluctantly participated in counseling with his wife when help was earlier sought for problems involving the children, and that he had ceased to participate before the counseling had effectively run its course.
Mr. Timmons argues that the district court erred in permitting two of Mrs. Timmons' witnesses, Dr. Loe and Mrs. Jones, to testify regarding the best interest of the children. These two witnesses, both of whom were accepted by the defendant and the court as experts in the field of counseling, testified over defendant's objection that it would be in the children's best interests to continue to reside with their mother. In the instant case, Mr. Timmons does not argue that the two witnesses were not qualified, only that because of a lack of sufficient contact with the children or the parties these witnesses did not have a sufficient factual basis upon which to form an opinion. In this regard, the record reflects that Mrs. Jones had spent about an hour and a half with the children on the morning of the trial and Dr. Loe had counseled with Mrs. Timmons in the past, part of which had included Mr. Timmons.
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto *1166 in the form of an opinion or otherwise. LSA-C.E. Art. 702.
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissable in evidence. LSA-C.E. Art. 703.
A court has much discretion in granting or denying a psychological evaluation in a custody determination. Clark v. Clark, 550 So.2d 913 (La.App. 2d Cir.1989). By that same token, the district court has much discretion to admit and consider the testimony of an expert counselor. It appears from the trial court ruling on the objection that the court intended to consider the extent and nature of the contact of the counselors with the parties and the children in evaluating the evidence received. Of interest in extensive oral reasons on the custody issue, the trial court does not mention the testimony of either of the counselors. Under these circumstances, we find no error.
After reviewing all of the evidence, we are unable to say that the district court abused its discretion in naming Mrs. Timmons as the domiciliary parent. While we may have rendered a different decision had we been deciding the case, much discretion must be vested in the district court, particularly in evaluating the weight of evidence which is to be resolved primarily on the basis of the credibility of witnesses. Pardue v. Pardue, 509 So.2d 708 (La.App. 3rd Cir.1987); Trosclair v. Trosclair, 337 So.2d 1216 (La.App. 1st Cir.1976). Accordingly, the district court's decision regarding domiciliary custody will be affirmed.

CHILD SUPPORT
Defendant raises three issues which relate to the calculation of child support which he should pay to Mrs. Timmons. Initially, he argues that the district court erred in calculating his gross monthly income. Further, he argues that the district court erred both in failing to give him any credit for the health and hospitalization coverage which he provides for the children through his employment and in refusing to take into account that he was financially obligated to support a daughter from a previous marriage, of whom he is the domiciliary parent. We will consider each of those arguments separately.

Gross Monthly Income
A party's "income" means his actual gross income, if he is employed to full capacity, or his potential income, if he is voluntarily unemployed or underemployed. A party shall not be deemed voluntarily unemployed or underemployed if he is absolutely unemployable or incapable of being employed, or if the unemployment or underemployment results through no fault or neglect of the party. LSA-R.S. 9:315(6).
"Gross income" is defined as "income from any source, including but not limited to salaries, wages, commissions, bonuses, dividends," and other sources not at issue in this case. LSA-R.S. 9:315(4).
The evidence introduced in the district court showed that defendant's average gross monthly income in 1990 was $2,444.92, while it fell slightly to $2,280.00 in 1991. Mr. Timmons testified that he earned more overtime in 1990 than was available the following year.
The district court concluded in written reasons that, although defendant was not earning the same amount of overtime as before, he would probably be able to earn at least some of it and selected the "middle" figure of $2,340.00 as defendant's gross monthly income. The district court's conclusions of fact regarding financial matters underlying an award of child support will not be disturbed in the absence of manifest error. Miller v. Miller, 475 So.2d 40 (La.App. 2d Cir.1985). We find no such error in the district court's determination of defendant's gross monthly income.
Further, when this figure is added to Mrs. Timmons' gross monthly income, the combined total is $3,090. The basic child support obligation, based on an extrapolation of the surrounding figures contained in the schedule found in LSA-R.S. 9:315.14, *1167 is $734 per month, the precise figure reached by the district court.

Cost of Insurance
Defendant next argues that the district court erred in failing to give him credit for purchasing health and hospitalization insurance for the children through his employer when it ordered him to pay plaintiff an additional $62.50 in order for her to pay for such coverage, despite that he was ordered to maintain the existing coverage. Plaintiff argues in brief that the district court calculated this matter correctly, but her argument in support thereof is circuitous and confusing. At oral argument, her counsel conceded that this element of the district court's decision presented a problem and that her argument in favor of maintaining the district court's result here was her weakest.
The guidelines set forth in LSA-R.S. 9:315 et seq are to be used in any proceeding to establish or modify child support filed on or after October 1, 1989. The cost of health insurance premiums incurred on behalf of the child shall be added to the basic child support obligation. LSA-R.S. 9:315.4; Norred v. Norred, 591 So.2d 396 (La.App. 2d Cir.1991), writ denied 592 So.2d 1319 (La.1992).
The party without legal custody or nondomiciliary party shall owe his or her total child support obligation as a money judgment of child support to the custodial or domiciliary party, minus any court-ordered direct payments made on behalf of the child for ... health insurance premiums... provided as adjustments to the schedule. LSA-R.S. 9:315.8D.
"Health insurance premiums" means the actual amount paid by a party for providing health insurance on behalf of the child. If more than one dependent is covered by health insurance which is paid through a lump-sum dependent-coverage premium, and not all of such dependents are the subject of the guidelines calculation, the cost of the coverage shall be prorated among the dependents covered before being applied to the guidelines. LSA-R.S. 9:315(5).
The district court concluded from the evidence that defendant pays $176.48 per month for health and hospitalization insurance premiums for himself, the plaintiff, and the three children, one of whom is the child of defendant's previous marriage. Defendant testified that insurance coverage for him alone would be $52.67 per month, leaving a difference of $123.81 per month to cover plaintiff and the three children.
The district court allocated $62.50 per month for the premiums on the two children of the parties' marriage, a reasonable division even though it is not accurate to the penny. It then added that sum to the calculation on line 4b of the LSA-R.S. 9:315.14 worksheet as it was required to do by LSA-R.S. 9:315.4.
However, the district court erred when it failed to later consider that same amount as an already paid part of defendant's child support obligation per line 6 of the worksheet. This is not a "deviation" from the guidelines under LSA-R.S. 9:315.1C, but rather, part of the calculation of the total child support obligation mandated by LSA-R.S. 9:315.8. We will recalculate defendant's obligation accordingly.

Obligation to Support Other Child
Mr. Timmons complains that the district court erred when it refused to consider that he has to support his 14-year-old daughter from a previous marriage. Mrs. Timmons argues that defendant is not entitled to such a consideration because he is the domiciliary parent of the child and does not have to actually pay a monthly sum to support this daughter.
Mr. Timmons introduced into evidence an expense worksheet showing how much it cost him to have his teenage daughter in his household. According to this worksheet, defendant spent approximately $445.00 per month to maintain this child.
The thrust of defendant's argument is that he is entitled to have an amount of money deducted from his gross monthly income on line 1.a. of the worksheet found in LSA-R.S. 9:315.15. He notes that if he were the nondomiciliary parent of this child from his previous marriage and paying *1168 child support to his first wife, he would clearly be entitled to have such an amount taken into consideration. The district court disagreed with defendant's argument and refused to deduct any amount from defendant's gross monthly income.
The district court was clearly correct. "Adjusted gross income" means gross income, minus amounts for preexisting child support or spousal support obligations paid to another who is not a party to the proceedings, or on behalf of a child who is not the subject of the action of the court. LSA-R.S. 9:315(1). Although there may be no fundamental difference between having to pay child support to another and having to pay for goods and services to support and maintain a child in one's own household, there is a legal difference because the statute clearly distinguishes between the two.
Prior to the adoption of the guidelines and the schedule of basic support in the difficult process of calculating reasonable child support, the courts were repeatedly challenged by the difficult question of the value of day-to-day care and maintenance which the custodial parent gives to the child by virtue of the custodial parent's presence and efforts. See Cobb v. Cobb, 554 So.2d 174 (La.App. 2d Cir.1989), and cases cited therein.
However, the current statutory scheme distinguishes between the treatment to be given support paid for a nondomiciliary child and the credit for support of a domiciliary child in determining the appropriate level of support for the children in the case at issue. As we have already noted, support paid to another for a nondomiciliary child who is not a party to the proceedings is to be deducted in the initial stages of calculation. LSA-R.S. 9:315.1. On the other hand, the support given a domiciliary child not a party to the proceedings is to be considered in determining whether the court wishes to deviate from the guidelines. LSA-R.S. 9:315.1(C). Obviously, the same difficulty which existed before the guidelines in determining the value to be assessed to day-to-day maintenance for a domiciliary child still pertains.
Thus, defendant was not entitled to have the cost of maintaining the child of his previous marriage automatically deducted from his gross monthly income. However, the district court may consider the cost of maintaining the previous child as a factor in deviation from the guidelines. Accordingly, we will now consider whether the district court abused its discretion in refusing to deviate from the guidelines based on defendant's financial obligations to his oldest child who resides with him.
The evidence indicates that Mrs. Timmons earns $750.00 per month while the district court concluded that Mr. Timmons earned $2,340.00 per month, a difference of $1,590.00. After paying plaintiff $540.69 per month in child support, the difference is narrowed somewhat, but there is still a significant difference between their two "incomes" in favor of Mr. Timmons. Mr. Timmons still has almost $1,800.00 with which to maintain himself and one child, while Mrs. Timmons has under $1,300.00 to maintain herself and two children.[2] In addition to this disparity, there is also the fact that the district court relieved defendant of his child support obligation in its entirety while he has the children for six weeks of extended visitation each summer.
Given the substantial disparity in the incomes of the parties, Mrs. Timmons' relative impecunity, and the fact that Mr. Timmons is relieved of having to pay any child support while he has custody of the children for six weeks each summer, we find no abuse of discretion by the district court in refusing to deviate from the guidelines because of Mr. Timmons' obligation to support a child of a different marriage.

*1169 CONCLUSION
For the foregoing reasons, substantive paragraph two of the district court judgment of September 25, 1991 is amended to reduce the obligation of William D. Timmons to Marilyn Mason Timmons for child support from $603.19 per month to $540.69 per month to give him credit for the health and hospitalization insurance he is ordered to provide in another paragraph of the judgment. In all other respects, the judgment of the district court is affirmed. Costs of this appeal are assessed two-thirds to Mr. Timmons and one-third to Mrs. Timmons.
AMENDED, AND AS AMENDED, AFFIRMED.
HIGHTOWER, Judge, concurring.
The present record fails to disclose that the district court directly addressed LSA-R.S. 9:315.1(C)(2), and defendant's legal obligation to support his resident child, in deciding whether to deviate from the guidelines. Instead, upon concluding that Mr. Timmons could not claim a deduction from his gross income, on Line 1(a) of the Worksheet, the trial judge failed to further address the matter.
Thus, I find no indication that the trial court's discretion in this regard has been exercised after a consideration of the appropriate statutory provision, especially in view of the clear error concerning calculation and deduction of health insurance premiums. However, engaging in the plausible, but possibly fallacious, assumption that a remand would produce no change in the ultimate award, I concur.
BROWN, Judge, concurs in part and dissents in part.
I agree with the concurring opinion but would find on these facts that a deviation from the guidelines was warranted concerning the legal obligation of defendant to support his minor child of a previous marriage who resided in his home. LSA-R.S. 9:315.1C(2).

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, HIGHTOWER, BROWN and STEWART, JJ.
Rehearing denied.
NOTES
[1] The body of the petition appears to seek custody in general terms, but there is no prayer pertaining thereto.
[2] We calculated defendant's child support obligations in accordance with the figures he suggested in order to determine the extent of the impact of his argument. Were we to adopt his argument, his monthly child support obligation would be reduced by an approximate amount of an additional $100.00, which is in addition to the $62.50 reduction we are already reducing it to take into account his payments for insurance coverage. This would only serve to widen the financial disparity between the parties and to aggravate Mrs. Timmons' impecunity.