|;WILLIAM H. BYRNES III, Chief Judge.
Defendant-appellant, Ellis Wells appeals a judgment dated January 28, 2002, rendered pursuant to a hearing on September 24, 2001, ordering him to $1,302.00 per month child support retroactive to May 10, 2001, to plaintiff-appellee, Ann Burks Pratt, for the support of their minor child, Rachel Burks, along with $5,000.00 for attorney fees. The judgment also ordered that Mr. Wells pay this support retroactive to the May 10, 2001 date Ms. Pratt filed the support petition; that Ms. Pratt maintain health insurance for the child; that the extraordinary medical expenses be allocated 65% to Mr. Wells and 35% to Ms. Pratt; that certain past medical expenses be likewise allocated in the same way; that Mr. Wells pay the costs of the Reliagene Paternity Test. Finally the judgment included a restraining order and an order permitting Ms. Pratt to proffer evidence regarding her monthly expenses and monthly childcare expenses for her other three minor children who are not a party to this lawsuit.
The appellant assigns as error the finding by the trial court that he had a gross income of $136,107.54 in 2000. He complains that the $136,107.54 figure improperly includes overtime and $12,433.00 is his wife, Patricia Wells’s salary. Therefore, he contends that his compensation should be figured at $116,000.00.
L.Mr. Wells testified that his W-2 from the Department of Veterans’ Affairs showed compensation of $127,026.63 for the year 2000. He testified that he had a W-2 from the State of Louisiana for the year 2000, which reflected additional compensation of $2,723.51. He also acknowledged that he received an additional $6,357.40 in compensation from the Medical Center of Louisiana. These figures total the same $137,107.54 used by the trial court.
At the conclusion of the hearing the trial judge commented in pertinent part as follows:
I did a couple of calculations of this based on and including Mr. Wells’ total income for the last year which I found to be one hundred thirty-six thousand one hundred seven fifty-four, as presented by Ms. Akehurst. And I also calculated it on his base income, which was 1 hundred and 16 thousand dollars, *1232 which did not include the overtime that he apparently made this year. I calculated Ms. Pratt’s income based on 54 thousand 77 dollars and then did calculations based upon adding it to Mr. Wells’ income, including the over time and also without the over time. The court concludes that his overtime is not a guarantee. He intimated that the program may be closing. It’s a matter of conjecture, and if it doesn’t close, a Rule to Increase might be in order. So I’m using the base income for my calculations for this award. I think that, Counsel, quite frankly, I’m not prepared to depart from the guidelines in this matter. Mr. Wells the base amount of child support you owe, sir, by my calculations is the sum of 1 thousand 3 hundred and 2 dollars a month, retroactive to the date of filing * * * * which is May 10th, 2001.
[[Image here]]
That’s just based on the base salary, not including over time. [Emphasis added.]
It is clear that at the time the judge ruled from the bench, he considered only Mr. Ellis’ base compensation of $116,000.00 when he fixed the support obligation at $1302.00 per month. However, when the written judgment was handed down it stated that the child support obligation was “based on the Court’s finding of Ellis’s ^yearly gross income of $136,107.54.” This appears to be a clerical error. Although the amount of Mr. Wells’ income as set forth in the written judgment is slightly more than $20,000.00 larger than the $116,000.00 figure used by the trial judge when he ruled from the bench, the amount of support remained the same: $1302.00 per month. This indicates that the trial court intended to use the $116,000.00 figure in the written judgment. Reinforcing this reasoning is the fact that had the trial court actually used the $136,107.54 figure, the pro rata allocated to Mr. Wells would have been greater than the 65% assigned to him by the trial court. We find no merit in this assignment of error.
The defendant complains that in spite of the fact that the plaintiffs petition for child support was filed on May 10, 2001, the trial court relied on guidelines that apply only to proceedings filed after August 15, 2001, the effective date of Act No. 1082 of 2001 establishing those guidelines under La. R.S. 9:315.19. Section 5 of Act No. 1082 provides that: “This Act applies to actions concerning child support filed after August 15, 2001.” Thus, we must agree with the defendant that the support schedule found in former La. R.S. 9:315.14 applies to this case rather than La. R.S. 9:315.19. The schedule found in former La. R.S. 9:315.14 topped out at a combined adjusted gross monthly income of $10,000.00.
In its support judgment, the trial court stated that:
The child support obligation is based on the Court’s finding of Ellis Well’s yearly gross income $136,107.54 and Ann Burk Pratt’s yearly gross income of $54,077.00; daycare expenses of $500.00 month; and monthly health insurance expenses of $61.70.
Thus, as the combined gross income of the parties exceeds the maximum encompassed by the support schedules, the trial court was supposed to exercise | reasonable discretion in fixing the support award. Former La. R.S. 9:315.14 B provided that:
If the combined adjusted monthly gross income is in excess of the maximum amount provided in Subsection A [$10,-000.00], then the court, in its discretion, may award child support beyond the *1233 schedule of support and allow support in accordance with the best interest of the child and the circumstances of each parent.
Mr. Wells contends that under former La. R.S. 9:315.14 the proper child support calculation (without taking into account any downward deviation in the guidelines attributable to the defendant’s excessive community obligations and his expenditures on behalf of his other children) was only $972.00. Mr. Wells’ brief demonstrates a calculation based on a combined adjusted monthly gross income of $15487.00 per month (after subtracting $400.00 per month for Mr. Wells’ court ordered child support for his daughter Aimee) resulting in a basic child support obligation of $1059.00. However, the figure of $1059.00 correlates exactly to the figure shown on the support schedule in effect on May 10, 2001, as the amount due when the combined adjusted is only $10,000.00, which is only approximately 65% of what the actual combined adjusted monthly gross income is according to Mr. Wells own figures.
Under Act 1082 of 2001, a new child support schedule was enacted in the form of La. R.S. 9:315.19, designating support figures for combined adjusted monthly gross incomes of up to $20,000.00. Under these new guidelines, using Mr. Wells’ own figure of $15,487.00 we find a basic child support payment of $1503.00 based on a combined monthly adjusted gross income of $15,450.00 and $1507.00 based on a combined monthly adjusted gross income of $15,500.00. Mr. Wells concedes that added to this basic monthly support figure should be $500.00 |Kfor net child care cost and $61.70 for medical insurance, bringing the total support figure (using Mr. Wells’ own figures) under the post August 15, 2001 schedule to at least $2062.00 per month. Using Mr. Wells allocation of 60/40 that would result in a monthly obligation of $1237.00 per month. If we were to use the trial court’s allocation of 65/35, the result is a monthly support obligation of $1344.00, or $40.00 per month more than was actually awarded by the trial court.
Mr. Wells calculation of Ms. Pratt’s income appears to differ significantly from that of the trial court. The trial court judgment attributed an annual income of $54,078.00 to her. Mr. Wells’ calculations include an additional $1040.00 due her in the form of monthly spousal support, which figure was elicited from Ms. Pratt on direct examination by her own attorney. We agree with Mr. Wells that the $1,040.00 amount needs to be added to $54,077.00 income figure used by the trial court for Ms. Pratt. In doing so we find that the monthly adjusted gross income figures presented by Mr. Wells in his brief must be accepted: $9,312.00 for Mr. Wells and $6,175.00 for Ms. Pratt, for a total of $15487.00. It follows that the allocation of support obligation as suggested in Mr. Wells’ brief of 60% to him and 40% to Ms. Pratt must also be adopted. “[T]hese percentage shares are not discretionary.” Finn v. Jackowski, 99-2808, p. 7 (La.App 2 Cir. 12/22/00), 779 So.2d 917, 922.
Therefore, we find that the trial court erred in its calculation of Ms. Pratt’s income and in the percentage allocation of the support obligation as between the spouses. Fortunately, the record is sufficiently complete that no remand is necessary to recalculate the proper support awards.
|(As mentioned earlier, under the new schedule, Mr. Wells support obligation would be only $1237.00 per month. The “Comment-2001” under La. R.S. 9:315.19 explains that:
The schedule of parents’ combined adjusted gross income up to an amount of *1234 ten thousand dollars was retained with some adjustments at the higher levels to facilitate the incorporation of additional amounts. For the same reason, the amounts of parents’ combined adjusted gross income from ten thousand dollars per month to twenty thousand dollars per month were adjusted at the lower levels. The principal effect of the 2001 amendment to this Section is to extend the schedule amounts of parents’ combined adjusted gross income to twenty thousand dollars. [Emphasis added.]
It is interesting to note that, consistent with this Comment, the old and new schedules are identical until a combined adjusted monthly income figure of $9400.00 is reached. After that point the new schedule becomes progressively higher, although not substantially so. Therefore, although the new schedule was not in force for the purposes of the instant litigation, it nonetheless can be used as a reference point for reasonableness of awards where the combined monthly income exceeds the $10,000.00 maximum figure found in the old schedule. Considering all of the factors discussed up to this point, we find that Mr. Wells should bear a basic monthly child support obligation of $1,200.00, before considering the merits of his arguments for a downward deviation.
The appellant assigns as error the failure of the trial court to deviate from the Child Support Guidelines under La. R.S. 9:315.1 because the amount awarded by the trial court failed to consider appellant’s expenses in connection with his obligation to support his other three children. Former La. R.S. 9:315.1 C(2) as applicable to the instant proceedings provided that:
|7C. In determining whether to deviate from the guidelines, the court’s considerations may include:
[[Image here]]
(2) The legal obligation of a party to support dependents who are not the subject of the action before the court and who are in that party’s household.
Relying on Timmons v. Timmons, 605 So.2d 1162 (La.App. 2 Cir.1992), the appellee counters that:
There is no abuse of discretion by a district court that refuses to deviate from the guidelines because of a party’s obligation to support a child of a different marriage who resides with them.
In effect, appellee argues that the trial court is automatically free to ignore a party’s obligation to support other children who reside with him/her. Timmons analyzes the problem as follows:
The thrust of defendant’s argument is that he is entitled to have an amount of money deducted from his gross monthly income on line l.a. of the worksheet found in LSA-R.S. 9:315.15. He notes that if he were the nondomiciliary parent of this child from his previous marriage and paying child support to his first wife, he would clearly be entitled to have such an amount taken into consideration. The district court disagreed with defendant’s argument and refused to deduct any amount from defendant’s gross monthly income.
The district court was clearly correct. “Adjusted gross income” means gross income, minus amounts for preexisting child support or spousal support obligations paid to another who is not a party to the proceedings, or on behalf of a child who is not the subject of the action of the court. LSA-R.S. 9:315(1). Although there may be no fundamental difference between having to pay child support to another and having to pay for goods and services to support and maintain a child in one’s own *1235 household, there is a legal difference because the statute clearly distinguishes between the two. [Emphasis added.]
Prior to the adoption of the guidelines and the schedule of basic support in the difficult process of calculating reasonable child support, the courts were repeatedly |schallenged by the difficult question of the value of day-to-day care and maintenance which the custodial parent gives to the child by virtue of the custodial parent’s presence and efforts. See Cobb v. Cobb, 554 So.2d 174 (La.App.2d Cir.1989), and cases cited therein. However, the current statutory scheme distinguishes between the treatment to be given support paid for a nondomicili-ary child and the credit for support of a domiciliary child in determining the appropriate level of support for the children in the case at issue. As we have already noted, support paid to another for a nondomiciliary child who is not a party to the proceedings is to be deducted in the initial stages of calculation. LSA-R.S. 9:315.1. On the other hand, the support given a domiciliary child not a party to the proceedings is to be considered in determining whether the court wishes to deviate from the guidelines. LSA-R.S. 9:315.1(0. [Emphasis added.] Obviously, the same difficulty which existed before the guidelines in determining the value to be assessed to day-to-day maintenance for a domiciliary child still pertains.
Thus, defendant was not entitled to have the cost of maintaining the child of his previous marriage automatically deducted from his gross monthly income. [Emphasis added.] However, the district court may consider the cost of maintaining the previous child as a factor in deviation from the guidelines. Accordingly, we will now consider whether the district court abused its discretion in refusing to deviate from the guidelines based on defendant’s financial obligations to his oldest child who resides with him. [Emphasis added.]
Timmons, 605 So.2d at p. 1167-1168.
Thus our reading of Timmons and our own reading of the law differs from that of the appellee. Although the amount of non-court-ordered support required by other domiciliary children is not automatically deducted from monthly gross income, it would be an abuse of discretion to automatically fail to even consider it. This is especially true where the income level of the parties exceeds the maximum provided by the support schedule, thereby affording the trial court no excuse for 19not exercising discretion. Therefore, for the trial court to refuse to admit relevant evidence concerning a party’s financial obligations to other children would be error. It is not sufficient for the trial judge to do as he did in this case and dispose of the matter by simply making the sweeping statement that he is aware of the other children.
In the following colloquy with Mr. Wells’ attorney, the trial court erred:
MS. MILLER:
Okay, Your Honor, it seems as though even though there isn’t a court order child support order for the other children, I understand, I just want them to be considered. I do have documentation just to substantiate some of their expenses, if I may?
THE COURT:
No, that’s irrelevant to these proceedings.
We are obligated to review the record to determine whether the trial court abused its discretion by not taking into account the appellant’s obligation to support other children.
*1236 The trial court rejected both parties’ attempts to introduce evidence of expenses connected with other children. Both parties proffered such evidence. Ms. Pratt did not appeal or answer the appeal filed by Mr. Wells. We find neither proffer in the record and Mr. Wells in his brief makes no reference to such evidence. His argument on appeal in this regard is based entirely on the general proposition that he has expenses in connection with the support of other children. This general proposition is unsupported by specific evidence as he has failed to assign as error or argue the failure of the trial court to receive evidence he offered on this issue. However, it has been held that it is not an abuse of discretion for the court to weigh the non-court — ordered support obligation of a party in regards to|inother children, “even without specific evidence of the impact of this obligation on his ability to support the child, who is the subject of this litigation.” Finn v. Jackowski, 99-2808, p. 6 (La.App. 1 Cir. 12/22/00), 779 So.2d 917, 921.
At the hearing below the judge made it clear that he was cognizant of the support that Mr. Wells was providing to children who were not the object of the instant child support proceedings:
It’s been made quite clear that he has three children at home or that he takes care of at present not the subject of this litigation.
However, the trial judge immediately went on to rule that the amount of expenses incurred by Mr. Wells in connection with these other children was “irrelevant to these proceedings,” and he refused to allow any evidence of those expenses to be admitted. When rendering his decision, the trial judge stated that: “... I’m not prepared to depart from the guidelines.”
Clearly, the lower court abused its discretion in its refusal to consider Mr. Wells’ other children. This Court’s task in correcting that problem is not made easier by the lack of specific evidence on this issue. However, we find that Mr. Wells obligation should be reduced by $150.00 per month in contemplation of his obligation to other children. This we feel is probably minimal, but we do not have sufficient information to enable us to do more.
The appellant also assigns as error the failure of the trial court to reduce his child support obligation because of extraordinary community debts, citing Savoie-Moore v. Moore, 1998-0235 (La.App. 4 Cir. 9/16/98), 719 So.2d 551. Former La. R.S. 9:315.1 C(4) provided that, in deciding whether to deviate from the guidelines the court might consider, “An extraordinary community debt of the parties.” The debts referred to by the appellant are not “community debts of the parties.” |n Appellant and appellee were never married. State ex rel. Dept of Social Services v. Rodell, 98-0093, p. 9-10 (La.App. 1 Cir. 5/18/99), 733 So.2d 1247, 1253. Thus, the Savoie-Moore case, upon which Mr. Wells relied, is inapposite as it involved community debts of parties who had been married. Moreover, Mr. Wells’ debts are not even debts incurred jointly with Ms. Pratt. The debts to which the appellant refers are debts of the community existing between him and his wife who is not a party to these proceedings. These are not “community debts of the parties” under former La. R.S. 9:315.1 C(4) or current La. R.S. 9:315.1 C(5). The debts are substantial, but not extraordinary given the income levels and multiple households involved. It is always a stretch where multiple households are involved. We find that a further reduction below the $1050.00 per month figure we have already calculated is not warranted.
*1237 Mr. Wells complains that the trial court erred in condemning him to pay $5,000.00 in attorney’s fees. La. R.S. 9:398.1 provides in pertinent part that:
When the court renders judgment in favor of a party seeking to establish paternity, it shall, except for good cause shown, award attorney’s fees costs to the prevailing party.
Mr. Wells’ does not contest the amount of the fee. He argues that because he had reason to doubt the paternity he should be excused from the statutory requirement to pay attorney’s fees for “good cause shown.” Although there is some merit in defendant’s argument, the record does not contain facts favoring the defendant’s argument that are so compelling that we could say that the award by the trial court of attorney’s fees was an abuse of discretion. There is evidence in the record in the form of numerous pleadings and delaying tactics from which a fact finder could reasonably infer that Mr. Wells’ contestation of paternity [^exceeded what may have been justified by any doubts he might legitimately have had. We find no merit in this assignment of error.
For the foregoing reasons the judgment of the trial court is affirmed with the exception of the percentage allocation of the various support obligations which shall be 60% for Mr. Wells and 40% for Ms. Pratt instead of 65% and 35%; Mr. Wells’ basic support obligation shall be reduced from $1302 per month to $1050.00 per month. In all other respects, the judgment below is affirmed.

AFFIRMED IN PART AND REVERSED IN PART.

MURRAY, J., concurs in part; dissents in part with reasons.