960 So.2d 921 (2007)
Amanda G. LAMBERT
v.
Darren Paul LAMBERT.
No. 2006 CU 2399.
Court of Appeal of Louisiana, First Circuit.
March 23, 2007.
*923 Brenda Braud, Hammond, for Plaintiff-Appellee Amanda G. Lambert.
Bruce E. Unangst, Gonzales, for Defendant-Appellant Darren Paul Lambert.
Before: KUHN, GAIDRY, and WELCH, JJ.
WELCH, J.
In this appeal, the defendant, Darren Paul Lambert, challenges a trial court judgment awarding the plaintiff, Amanda G. Lambert, child support and interim spousal support. After a review of the record of these proceedings, we affirm the judgment of the trial court.

I. FACTUAL AND PROCEDURAL HISTORY
The parties in this matter, Amanda Lambert and Darren Lambert, were married on February 14, 2003. One child was born of their marriage, and Darren has custody of his three children from a prior marriage. On April 11, 2006, Amanda filed a petition for divorce requesting that the parties be awarded joint custody of their minor child, that she be designated as the child's domiciliary parent, that she be awarded child support for the support of the minor child, and that she be awarded interim spousal support.
After a hearing on June 28, 2006,[1] the trial court rendered judgment awarding the parties joint custody of the minor child, with Amanda designated as the child's domiciliary parent; awarding Darren *924 specific visitation with the minor child; ordering Darren to pay Amanda child support in the amount of $505.56 per month, retroactive to April 11, 2006; ordering Darren to pay interim spousal support to Amanda in the amount of $611 per month, retroactive to April 11, 2006, with payment of $111 of that monthly award deferred for six months; ordering Darren to maintain health insurance on the minor child until further order of the court and on Amanda until the rendition of a final judgment of divorce; awarding Amanda exclusive use of the community automobile in her possession and ordering Darren to pay the monthly note associated with that automobile; ordering Amanda to pay the automobile insurance premiums for the two community automobiles (including the automobile used by Darren) in the amount of $210 per month; and ordering Darren to pay the monthly credit card payments on the community credit card debt. A written judgment in conformity with the trial court's ruling was signed on August 11, 2006, and it is from this judgment that Darren now appeals.

II. ASSIGNMENTS OF ERROR
On appeal, Darren contends that: (1) the trial court erred by imputing income to him when calculating his child support obligation; (2) the trial court abused its discretion when it refused to deviate from the child support guidelines considering his obligation to support the three minor children from his previous marriage of whom he has custody; and (3) the trial court abused its discretion in its award of interim spousal support to Amanda.

III. LAW AND DISCUSSION
A. Child Support
The Louisiana Child Support Guidelines set forth the method for implementation of the parental obligation to pay child support. See La. R.S. 9:315.1(A). Louisiana Revised Statutes 9:315.2 requires the court to calculate a basic child support obligation by combining the parents adjusted gross incomes, determining each party's percentage share of the combined adjusted gross income, and applying these calculations to the schedule contained in La. R.S. 9:315.14. The total child support obligation is thereafter computed by adding together the basic child support obligation, the net child-care costs, the cost of the child's health insurance premiums, extraordinary medical expenses, and other extraordinary expenses. La. R.S. 9:315.8(A). Each parent's share of the total child support obligation is then determined by multiplying his or her percentage share of the combined adjusted gross income by the total child support obligation. La. R.S. 9:315.8(C). Thereafter, the court fixes and awards, as a money judgment, the total child support obligation in favor of the domiciliary parent or parent with legal custody. La. R.S. 9:315.8(D). Generally, an award of child support is entitled to great weight and will not be disturbed on appeal absent an abuse of discretion. Walden v. Walden, 2000-2911, p. 4 (La.App. 1st Cir.8/14/02), 835 So.2d 513, 517; Templeton v. Templeton, XXXX-XXXX, p. 4 (La.App. 1st Cir.12/22/00), 774 So.2d 1257, 1260.
1. Darren's Gross Income
To apply the guidelines, the court must initially determine the gross income of the parties. See La. R.S. 9:315.2(A). Income means the actual gross income of a party, if the party is employed to full capacity. La. R.S. 9:315(C)(5)(a). Income also means the potential income of a party, if the party is voluntarily unemployed or underemployed;[2] *925 in such a case, his gross income shall be determined as set forth in La. R.S. 9:315.11. La. R.S. 9:315(C)(5)(b) and 9:315.2(B). If a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential (rather than actual gross income), unless the party is caring for a child of the parties under the age of five years. La. R.S. 9:315.11; see Walden, 2000-2911 at pp. 9-10, 835 So.2d at 530.
Voluntary unemployment or underemployment for purposes of calculating child support is a factual determination of good faith on the obligor-spouse. Romanowski v. Romanowski, XXXX-XXXX, p. 6 (La.App. 1st Cir.2/23/04), 873 So.2d 656, 660. With regard to the factual findings made by the trial court in determining an award of child support, appellate review of such factual findings is subject to the manifest error/clearly wrong standard of review. See Romanowski, XXXX-XXXX at p. 8, 873 So.2d at 662; Walden, 2000-2911 at p. 4, 835 So.2d at 517.
Darren testified that he is employed by Shaw Services, L.L.C. as a piping system fabricator for Sunland Fabricators, and that he is paid $19.40 per hour. Darren further testified that he is not "guaranteed" to work 40 hours each week nor is he "guaranteed" overtime.
Although Darren failed to provide the trial court or Amanda with either a verified income statement showing his gross income or his most recent federal tax return, as mandated by La. R.S. 9:315.2(A), he did offer nine pay stubs as documentation of his current and past earnings. These pay stubs reflect the following: during the week of March 19, 2006, Darren worked 40 hours at the rate of $19.40 per hour and 2 hours at the overtime rate of $29.10 per hour; during the week of March 26, 2006, he worked 36 hours at the rate of $19.40 per hour; during the week of April 2, 2006, he worked 37 hours at the rate of $19.40 per hour; during the week of April 9, 2006, he worked 38.5 hours at rate of $19.40 per hour; during the week of April 16, 2006, he worked 39.25 hours at the rate of $19.40 per hour; during the week of April 23, 2006, he worked 15.5 hours at rate of $19.40 per hour; during the week of April 30, 2006, he worked 16 hours at the rate of $19.40 per hour; during the week of May 7, 2006, he worked 35.75 hours at the rate of $19.40 per hour; and during the week of June 11, 2006, he worked 29.5 hours at the rate of $19.40 per hour. Additionally, the pay stub for the week of June 11, 2006, reflects that Darren's year-to-date gross pay was $20,011.11.
Amanda testified that she is unemployed because she is caring for the minor child of the parties, who at the time of the hearing in the matter was approximately seven months old. Amanda offered into evidence obligation worksheet A, a worksheet used for the calculation of the total child support obligation under La. R.S. 9:315.8. According to this worksheet, she calculated Darren's monthly gross income to be $3,363 (or $19.40 per hour, 40 hours per week).[3] Based on this gross income, Darren's child support obligation was calculated to be $505.56, plus the cost of the child's health insurance premium.
*926 After considering all of the evidence, the trial court concluded that Darren was capable of earning $19.40 per hour and working 40 hours per week, resulting in a monthly gross income of $3,363 being imputed to him for purposes of calculating child support. The trial court then set child support at $505.56 retroactive to April 11, 2006. On appeal, Darren does not dispute that $505.56 is the proper child support calculation under the guidelines for a gross income of $3,363 per month and that he earns $19.40 per hour; however, he contends that the trial court erred in finding that he was voluntarily underemployed (i.e., that he worked or was capable of working forty hours per week), thereby miscalculating his gross monthly income.
Based on our review of the record, we do not find that the trial court manifestly erred in determining that Darren was voluntarily underemployed and capable of working forty hours per week, or in imputing $3,363 in gross monthly income to Darren.
One of the nine weeks for which Darren provided his pay stub shows that he worked 40 hours, plus 2 hours of overtime, during the week. A review of all nine pay stubs indicates that Darren has consistently worked between 36 and 42 hours every week, with a few exceptions. Specifically, during the weeks of April 23 and April 30, 2006, the number of hours Darren worked decreased by more than half. Notably, the decrease in Darren's work hours happened just after Amanda filed the petition for divorce in this matter. The other exception was during the pay period ending on June 11, 2006, when Darren worked 29.5 hours, and was just prior to the hearing of this matter.
Furthermore, although Darren testified that the nine pay stubs submitted into evidence were for his last nine pay periods, a review of the dates of those pay stubs shows that no pay stubs were submitted by Darren for the weeks between May 7, 2006 and June 11, 2006. Yet during this time period, Darren's year-to-date gross pay increased from $16,465.76 on May 7, 2006, to $20,011.11 on June 11, 2006an increase of $3,545.35 during that four week period, and importantly, $222.35 more than the gross monthly income imputed to Darren by the trial court.
Moreover, while Darren testified that he was not guaranteed to work forty hours per week or to work overtime, our review of the evidence indicates otherwise. Darren's year-to-date gross income was $20,011.11 on June 11, 2006. Considering that time period from January 1, 2006 through June 11, 2006, encompasses approximately twenty-three weeks, a year-to-date gross income of $20,011.11 would yield a monthly gross income of approximately $3,770.21.[4] This is approximately $407.21 per month more than the income imputed to Darren by the trial court at $19.40 per hour, forty hours per week. Thus, Darren must have worked at least 40 hours per week earning $19.40 per hour (if not more than that earning overtime pay), on a consistent basis in order for his pay stub to reflect a year-to-date gross income of $20,011.11 on June 11, 2006.
Accordingly, we find a reasonable basis exists in the record to support the trial court's factual finding that Darren was capable of working 40 hours per week and that Darren's monthly gross income was $3,363 based on earning $19.40 per hour. Our review of the record indicates that these finding are not clearly wrong, and we do not find that the trial court manifestly *927 erred in determining that Darren was voluntarily underemployed.
2. Request for Deviation from the Guidelines
Darren further contends on appeal that the trial court abused its discretion in determining his child support obligation because the trial court should have deviated from the child support guidelines because he has custody of his three children from a previous marriage.
Louisiana Revised Statutes 9:315.1(A) provides "There shall be a rebuttable presumption that the amount of child support obtained by the use of the guidelines set forth in this Part is the proper amount of child support." The trial court may deviate from the guidelines only "if their application would not be in the best interest of the child or would be inequitable to the parties." La. R.S. 9:315.1(B). In determining whether to deviate from the guidelines, the trial court may consider the legal obligation of a party to support dependents who are not the subject of the action before the court and who are in that party's household. La. R.S. 9:315.1(C)(2).
Louisiana Revised Statutes 9:315.1(C)(2) does not allow an automatic deviation from the child support guidelines based solely on the obligation to support dependents who are not the subject of the action before the court and who are in that party's household. But rather, all that is required by this statute is that the trial court consider the obligation to support a domiciliary child not a party to the proceedings as a basis for an adjustment of the child support obligation. See Pratt v. Wells, XXXX-XXXX, p. 8 (La.App. 4th Cir.2/26/03), 840 So.2d 1230, 1235. Moreover, a deviation pursuant to La. R.S. 9:315.1(C)(2) must be supported by an evidentiary basis. Guillot v. Munn, 96-0620 (La.6/21/96), 676 So.2d 86 (per curiam).
In this case, as the parent seeking the deviation, Darren had the burden of proving that an application of the child support guidelines would not be in the best interest of his child (with Amanda) or would be inequitable to him because of his expenses in connection with his obligation to support his other three children.
Darren testified that since June 2005, he has had custody of his three children (ages fourteen, eight, and six) from a previous marriage, and that he does not receive any child support for these children from his ex-wife. With regard to his expenses for his three children, Darren testified that he does not pay rent, because he and the children reside with his mother. He pays $105.01 per week (or $420.04 per month) for health insurance on his entire family (Amanda, himself, and his four children or $70 per month per person), he pays $16.03 per week (or $62.12 per month) for dental insurance on his entire family (or $10.69 per month per person), he spends approximately $150-$200 per week on food for himself and his children (or approximately $645-$860 per month), and he spends approximately $11-$12 per child each month on grooming expenses (haircuts).
Just prior to ruling on child support, the trial court inquired of the parties as to whether the guideline child support calculation of $505.56 took "into account that there are three other children?" Darren's counsel replied "No." Thereafter, the trial court rendered judgment setting Darren's child support obligation at $505.56. This colloquy between the trial court and Darren's counsel indicates that the trial court did in fact consider Darren's obligation to support his other three domiciliary children, and thereafter in its discretion, chose not to deviate from the child support guidelines.
*928 Bearing in mind the trial court's previous factual determination that Darren had a gross monthly income of $3,363, and that a strict application of the child support guidelines would yield a child support obligation of $505.56 and that Darren's expenses associated with his children from his previous marriage total approximately $920.07 to $1,138.07 per month, we cannot say that an application of the child support guidelines would not be in the best interest of his child with Amanda or would be inequitable to him. Darren's total monthly support obligations for his four children totals approximately $1,425.63 to $1,643.63less than half of his gross monthly income. Thus, we cannot say that the trial court abused its discretion in its refusal to deviate from the child support guidelines. Rather, we find that the amount of child support obtained by the use of the guidelines, $505.56 per month, is the proper amount of child support. Accordingly, we hereby affirm the August 11, 2006 judgment of the trial court awarding Amanda child support in the amount of $505.56 per month.
B. Interim Periodic Spousal Support
Lastly, on appeal, Darren contends that the trial court erred in awarding Amanda interim spousal support in the amount of $611 per month because he does not have the ability to pay interim spousal support.
In a proceeding for divorce, the court may award an interim periodic support allowance to a spouse based on the needs of that spouse, the ability of the other spouse to pay, and the standard of living of the spouses during the marriage. La. C.C. arts. 111 and 113. Interim spousal support is designed to assist the claimant spouse in sustaining the same style or standard of living that he or she enjoyed while residing with the other spouse, pending the litigation of the divorce. Derouen v. Derouen, XXXX-XXXX, p. 3 (La.App. 3rd Cir.2/2/05), 893 So.2d 981, 984. A spouses right to claim interim periodic support is grounded in the statutorily imposed duty on spouses to support each other during marriage, and thus provides for the spouse who does not have sufficient income for his or her maintenance during the period of separation. Derouen, XXXX-XXXX at p. 4, 893 So.2d at 984. Interim support preserves parity in the levels of maintenance and support and avoids unnecessary financial dislocation until a final determination of support can be made. Id.
The trial court is vested with much discretion in determining an award of interim spousal support. Such a determination will not be disturbed absent a clear abuse of discretion. Romanowski, XXXX-XXXX at p. 11, 873 So.2d at 664. An abuse of discretion will not be found if the record supports the trial court's conclusions about the means of the payor spouse and his or her ability to pay. Derouen, XXXX-XXXX at p. 4, 893 So.2d at 984.
The spouse seeking interim spousal support bears the burden of proving his or her entitlement to such support. Romanowski, XXXX-XXXX at p. 11, 873 So.2d at 663-64. To determine whether a claimant spouse is entitled to receive interim support, the trial court must assess the needs of that spouse, the ability of the nonclaimant spouse to pay, and their standard of living during the marriage. Derouen, XXXX-XXXX at p. 4, 893 So.2d at 984
A claimant demonstrates the need for interim spousal support if she establishes that she lacks sufficient income or the ability to earn a sufficient income "to sustain the style or standard of living that [s]he enjoyed while [s]he resided with the other spouse." Derouen, XXXX-XXXX at p. 4, 893 So.2d at 984 (quoting January v. January, 94-882, 94-883, p. 3 (La.App. 3rd *929 Cir.2/1/95), 649 So.2d 1133, 1136). The needs of the claimant spouse have been defined as the total amount sufficient to maintain that spouse in a standard of living comparable to that enjoyed prior to the separation, limited only by the other spouse's ability to pay. Derouen, XXXX-XXXX at pp. 4-5, 893 So.2d at 984.
Once the claimant spouse has established need, the court must examine the ability of the payor spouse to provide support. Derouen, XXXX-XXXX at p. 5, 893 So.2d at 985. If the needs of the claimant spouse surpass the ability of the other spouse to pay, interim spousal support should be fixed at a sum which will as nearly as possible be just and fair to all parties involved. Id.
In assessing a spouse's ability to pay, the court must consider his or her means. "Means" includes any resource from which the wants of life may be supplied, requiring an assessment of the entire financial condition of the payor spouse. Id. "Entire financial condition" is not limited to income, but also includes any resource from which his or her needs can be supplied, including a spouse's earning capacity. Derouen, XXXX-XXXX at p. 6, 893 So.2d at 985.
In this case, in order to be entitled to interim periodic support, Amanda had the burden of proving not only that she lacked sufficient income to maintain the standard of living that she enjoyed while married, but also that Darren had the ability to pay.
As noted hereinabove, Amanda testified that she was unemployed because she is caring for the minor child of the parties. Amanda's testimony regarding her monthly expenses or "needs" consisted of the following:
Q. And would you like for this court to award you interim spousal support, alimony?
A. Yes, ma'am.
Q. Do you feel that the figure of $611 would be appropriate looking at your . . .
. . . .
. . . form that you completed and filed into the record of this matter when you filed to proceed in forma pauperis. It shows that your monthly expenses are $695, not counting your credit card payments and your car payments. Is that correct?
A. Yes, ma'am.
. . . .
Q. And are you asking this Court to award you $611 for interim spousal support?
A. Yes, ma'am.
According to Amanda's affidavit submitted as part of her motion to proceed in forma pauperis, her monthly living expenses are as follows:

Rent $-0- (lives with mother at
 present)[5]
Utilities $100 (to mother for portion of
 bills[)]
Travel $ 50 (gas, car maintenance)
Food $200
Grooming $ 20
Auto ins. $150
Home ins. $-0-
Life ins. $-0-
Other ins. $-0-
Christmas $ 15
Education $-0-
Clothing $100 (includes the minor child)
Dry Cleaning None
Household supplies $ 10
Misc. $ 50
Total $695

Additionally, Amanda testified that she is also paying the automobile insurance premium on the community automobile in Darren's possession because the premium is automatically deducted from her checking account, and that the total automobile *930 insurance premium for the two community automobiles is approximately $210 per month.
Based on this evidence, we find that Amanda has sufficiently proven her need. Amanda's monthly expenses on her affidavit exceed her income by $695. Darren does not challenge Amanda's expenses or need, but rather, he asserts that his income is insufficient for him to pay her support, particularly given the child support obligation owed to her and his obligation to support his three children from his previous marriage.
Although the trial court determined that Darren's gross monthly income was $3,363, the trial court made no factual findings with regard to Darren's net monthly income, an important factor in determining his ability to pay interim spousal support. As we previously noted, Darren's pay stub for the week ending on June 11, 2006, reflects that his year-to-date gross income was $20,011.11. That same pay stub reflects that his year-to-date net income was $15,035.84, which yields an approximate monthly net income of $2,832.84.[6]
Darren's evidence shows that his monthly living expenses, including the expenses associated with his three children from his previous marriage, total approximately $1,326-$1,553. Specifically, these expenses are as follows: rent$0.00 (he lives with his mother); automobile note $0.00 (the community automobile in his possession is paid for); foodapproximately $645-$860 per month ($150-$200 per week); grooming and haircuts$44-$48 per month ($11-$12 per person); Amanda's automobile note$347;[7] mobile telephone$45-$53; fuel$120; credit card payments for the two community credit card debts$125.[8]
Considering Darren's $2,832.84 net monthly income, and subtracting his and his three children's combined monthly living expenses of approximately $1,326-$1,553, and monthly his child support obligation of $505.56, Darren still has approximately $774.28-$1,001.28 with which to pay interim spousal support. While we sympathize with the financial strain that has obviously been placed on Darren by the trial court's award of interim spousal support, and believe that that a lower award would have certainly been more equitable and practical, particularly given the fact that Darren has four children to support, the record herein does support the trial court's conclusions that Darren has the means or ability to pay spousal support to Amanda in the amount of $611. Therefore, we cannot say that the trial court abused its discretion in its award of interim spousal support to Amanda, and we are constrained to affirm the August 11, 2006 judgment of the trial court awarding Amanda interim spousal support in the amount of $611 per month.

IV. CONCLUSION
For the above and foregoing reasons, we do not find that the trial court manifestly *931 erred by imputing income to Darren Lambert when calculating his child support obligation or that the trial court abused its discretion in refusing to deviate from the child support guidelines, and we do not find that the trial court abused its discretion in its award of interim spousal support to Amanda Lambert. Therefore, the August 11, 2006 judgment of the trial court is hereby affirmed.
All costs of this appeal are hereby assessed to the appellant/defendant, Darren Paul Lambert.
AFFIRMED.
NOTES
[1] The trial court limited the hearing in this matter to 20 minutes, allowing "10 minutes per side." Although we question the propriety of the imposition of a such a short time limitation in a case involving important issues such as child custody, child support, and interim spousal support, the parties in this matter have not asserted that their due process rights were violated or that they were prejudiced as a result of the trial court's decision. See Goodwin v. Goodwin, 618 So.2d 579, 583-85 (La.App. 2nd Cir.1993), writ denied, 623 So.2d 1340 (La.1993). Therefore, we are constrained to act.
[2] A party shall not be deemed voluntarily unemployed or underemployed if he or she is absolutely unemployable or incapable of being employed, or if the unemployment or underemployment results through no fault or neglect of the party. La. R.S. 9:315(C)(5)(b).
[3] No income was attributed to Amanda (nor could any income be imputed) since she is unemployed and caring for a child of the parties under the age of five. See La. R.S. 9:315.11.
[4] [($20,011.11 ÷ 23 weeks) × 52 weeks] ÷ 12 months= $3,770.21.
[5] We note that the both parties resided with Amanda's mother during their marriage.
[6] [($15,035.84 ÷ 23 weeks) × 52 weeks] ÷ 12 months= $2,832.84.
[7] Darren stipulated at the end of the hearing in this matter that Amanda could have exclusive use of the community automobile in her possession and that he would pay the monthly note associated with that automobile.
[8] We note Darren Lambert also pays $420.04 per month for health insurance for his family and $64.12 per month for dental insurance for his family. However, Darren's employer deducts this expense from Darren's gross pay prior to determining his net pay. Therefore for the purpose of evaluating Darren's ability to pay interim spousal support, we need not consider this as a monthly expense that is paid out of Darren's net monthly income.