## NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2023 CU 0294

KAILEY GERAGE

VERSUS

WILLIAM McCANTS

*DATE OF JUDGMENT:* **NOV 0 9 2023**

ON APPEAL FROM THE FAMILY COURT,
PARISH OF EAST BATON ROUGE, STATE OF LOUISIANA
NUMBER 194443, DIVISION A

HONORABLE PAMELA J. BAKER, JUDGE

\* \* \* \* \* \*

Scott P. Gaspard
Baton Rouge, Louisiana

Counsel for Plaintiff-Appellant
Kailey Gerage

Brian J. Prendergast
Baton Rouge, Louisiana

Counsel for Defendant-Appellee
William McCants

\* \* \* \* \* \*

BEFORE: GUIDRY, C.J., CHUTZ, AND LANIER, JJ.

**Disposition: AFFIRMED.**

**CHUTZ, J.**

Plaintiff-appellant, Kailey Gerage, appeals the family court's judgment, increasing the monthly child support obligation of defendant-appellee, William Wade "Trey" McCants III, but allowing a deviation from the amount of the basic child support obligation as calculated under the Louisiana Child Support Guidelines. Kailey also appeals the family court's ruling, declining to find William in contempt of court for failing to meet with a parenting coordinator. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Kailey and Trey were involved in a romantic and sexual relationship, which resulted in the conception and birth of their child in July 2013. Although Trey was listed as the father on the birth certificate, signed an acknowledgement at the time of the child's birth, and the child carries his surname, on May 12, 2014, Kailey filed a petition for paternity. Pertinent to this appeal, in her petition, Kailey raised the issues of custody and child support. Trey answered Kailey's lawsuit, asserting reconventional demands on the issues of custody and child support. On September 16, 2014, the family court judge signed a stipulated judgment in which the parties agreed to joint custody with Kailey designated as domiciliary parent and a monthly child support obligation in favor of Kailey in the amount of $470.00. The judgment stated that "child support is set without prejudice to the rights of either party to seek a modification thereof without having to show a change in circumstances."

On October 21, 2021, Kailey filed a rule seeking, among other things, a modification of child support and contempt relief. The basis of her contempt request was Trey's refusal to participate in a parenting coordinator meeting as ordered in an earlier stipulated judgment. Kailey further filed a motion to compel discovery on June 13, 2022, requesting compliance with her attempts to gather

2

detailed financial information from Trey. The family court granted Kailey's motion to compel and ordered Trey to produce specified financial information.

On July 28, 2022 and August 29, 2022, a hearing was held on Kailey's October 21, 2021 rule. The family court issued a judgment on October 18, 2022, ordering Trey to pay a monthly child support obligation in the amount of $575.00. This amount included "a downward deviation from the child support guidelines ... based on other children living in [Trey's] home." The family court declined to find Trey in contempt. Kailey appeals, challenging the amount of child support awarded and the family court's contempt determination.

## CHILD SUPPORT AWARD

The determination or modification of child support is governed by the guidelines contained in La. R.S. 9:315-315.20. *Mize v. Mize*, 2022-0094 (La. App. 1st Cir. 11/4/22), 355 So.3d 16, 19. Generally, an award of child support is entitled to great weight and will not be disturbed on appeal absent an abuse of discretion. Furthermore, a family court's conclusions of fact regarding financial matters underlying an award of child support will not be disturbed in the absence of manifest error. The manifest error standard of review is based, in part, on the family court's ability to better evaluate the testimony of live witnesses, compared with an appellate court's sole reliance upon a written record. When presented with two permissible views of the evidence, the trier of fact's choice between them cannot be manifestly erroneous. The family court has wide discretion in determining the credibility of witnesses and its factual determination will not be disturbed on appeal absent a showing of manifest error. *Keith v. Keith*, 2018-1222 (La. App. 1st Cir. 3/20/19), 2019 WL 1292361, at *2.

The family court found that Trey had a gross income of $4,300.00 per month, which amounted to 66% of the parties' combined gross income. Although

it recognized that under a mechanical application of the child support guidelines Trey's basic child support was $640.00 per month, the family court deviated downward to adjust Trey's monthly child support obligation to $575.00 based on his legal obligation to support other children living in his home.

**Gross Income:**

The Louisiana Child Support Guidelines set forth the method for implementation of the parental obligation to pay child support. See La. R.S. 9:315.1(A). To apply the guidelines, the court must initially determine the gross income of the parties. See La. R.S. 9:315.2(A). Income means the actual gross income of a party, if the party is employed to full capacity. La. R.S. 9:315(C)(5)(a). Gross income, defined in La. R.S. 9:315(C)(3)(a), includes income from any source. *Keith*, 2019 WL 1292361, at *3. Gross income means gross receipts minus ordinary and necessary expenses required to produce income for purposes of income from self-employment, proprietorship of a business, or joint ownership or a partnership or closely held corporation. La. R.S. 9:315(C)(3)(c).

On appeal, Kailey asserts the family court erred in its determination of Trey's gross income. She maintains that she established the gross receipts generated by a corporation for which Trey owned a percentage and that the burden of proving the ordinary and necessary expenses of that corporation then fell on Trey to establish his gross income from that corporation.

In addition to Trey's income/expense statement, Kailey offered into evidence the 2020 federal income tax return of Stateline Autoplex, LLC (Stateline), a business in which Trey has held an interest. According to Trey, the 2021 federal income tax return had not been prepared as of the date of the hearing. The 2020 federal income tax return showed Stateline reported a loss in excess of $10,500.00. The only gross receipts contained in the record are those of Stateline,

4

which generated over $3,000,000.00 in sales in 2020. The 2020 federal income tax return establishing Stateline's loss set forth an itemization of its expenses, including salaries, repairs and maintenance, rent, taxes and licenses, straight-line depreciation, advertising, bank service charges, contractors, fuel, insurance, job supplies, legal and professional fees, meals, office supplies and computer expense, service/shop supplies, and utilities. We cannot say the family court was manifestly erroneous in accepting the itemized expenses contained in Stateline's 2020 federal income tax return as evidence of the ordinary and necessary expenses of that business for which Trey held an interest.

Kailey also maintains that the income from Higher Spirits Package Store, LLC, a business that Trey established in 2019 or 2020, should have been factored into the determination of his gross income. The record is devoid of evidence showing that Trey derives any income from the business. According to his responses to interrogatories and in conformity with his testimony at the hearing, Trey does not draw a salary from the business. Kailey, who filed the rule to modify child support, failed to offer any evidence to support a finding that Trey receives any income from this source.[1]

Mindful that the family court must use its discretion in setting the amount of child support based upon the facts before it, and the appellate court is not to disturb the family court's factual findings absent an abuse of its discretion or manifest error, see **Keith**, 2019 WL 1292361, at *5, we find a reasonable evidentiary basis exists to support Trey's gross income determination. In his income/expense statement, Trey set forth the amount of $4,299.33, which included $833.33 attributable to his partnership interest in Stateline, and the family court concluded

---

[1] Kailey has the right to request a modification of the child support obligation if she can show a material change in circumstances, such as an increase in Trey's gross income from his interest in Higher Spirits Package Store, LLC. See La. R.S. 9:311(A); **Keith**, 2019 WL 1292361, at *5 n.11.

his gross monthly income was $4,300.00. Accordingly, that determination is not manifestly erroneous.

## Downward Deviation:

Because the amount of a child support obligation determined by the use of the guidelines is presumptively correct, the party urging a deviation bears the burden of proving by a preponderance of the evidence that a deviation is warranted. When deviating from the guidelines, courts must give specific reasons for the deviation, specifying the particular facts and circumstances evidencing that a deviation is warranted. Deviations should be allowed only in limited circumstances so that the function of the guidelines, which is to provide adequacy and consistency in child support awards, is preserved. *Mize*, 355 So.3d at 19 (citing *Guillot v. Munn*, 99-2132 (La. 3/24/00), 756 So.2d 290, 297).

Pursuant to La. R.S. 9:315.1(B)(1), if the court finds that the application of the guidelines would not be in the best interest of the child or would be inequitable to the parties, the court may deviate from the guidelines. La. R.S. 9:315.1(C) provides a list of factors that may be considered by a court in determining whether to deviate from the guidelines, including "[t]he legal obligation of a party to support dependents who are not the subject of the action before the court and who are in that party's household." La. R.S. 9:315.1(C)(2). Deviations by the family court from the guidelines shall not be disturbed in the absence of manifest error. La. R.S. 9:315.17. See *Mize*, 355 So.3d at 19. The party benefitting from the deviation bears the burden of proving that an application of the child support guidelines would not be in the best interest of the child or would be inequitable to him because of his expenses in connection with his obligation to support his other children. See *Lambert v. Lambert*, 2006-2399 (La. App. 1st Cir. 3/23/07), 960 So.2d 921, 927.

6

Without challenging the family court's calculation of $640.00 per month as the presumptive basic child support obligation under the Louisiana Child Support Guidelines, on appeal, Kailey contends it was error for the family court to reduce Trey's monthly child support obligation by $65.00. Kailey asserts that the record lacks an evidentiary basis to support the reduction.

In granting the deviation, reducing Trey's monthly child support obligation to $575.00, the family court judge stated:

> [E]verything on here is a deviation. ... [Trey's] expenses so exceed the tuition, and the childcare, and such. I just don't think he can afford to pay it, otherwise – and when people can't afford to pay support, they don't pay it. They don't pay what they [can't] afford to pay, they just plain don't pay it.

Thus, the family court concluded that it would be inequitable to Trey because of his expenses in connection with his obligation to support his other children.

Trey testified that he and his wife, Emily, pay all his personal expenses. They have two children, both of whom live with Trey and Emily. The older child, who was 4 years old at the time of the hearing, attends a private school with a monthly tuition of $391.00, which is paid from Trey's joint checking account with Emily. The younger child, who was less than a year old at the time of the hearing, has a monthly daycare cost of $740.00, also paid from Trey and Emily's joint checking account. These amounts were set forth in Trey's income/expense statement under "Other Expenses." Emily's testimony corroborated Trey's insofar as the amounts of the monthly tuition and daycare expenses. Also, a copy of the 2021-22 tuition schedule was introduced into evidence supporting the amount of tuition Trey and Emily pay for their eldest child's tuition.

Based on Trey's income/expense statement, which did not account for all of the couple's household expenses, his monthly net living expenses were $4,109.55. Emily testified that her only checking account is the joint one she shares with Trey.

7

She itemized additional monthly expenses the couple's household incurs that Trey did not set forth in his income/expense statement, including $970.00 for a note on her vehicle; $50.00 for clothing for herself and the children; $600.00 for fuel in connection with her work as a traveling nurse; $67.50 for household supplies;[2] $250.00 for personal grooming for herself and the children; $30.00 for the household's water bill; and $155.00 for the phone bill for the cellular data she and the children access. Thus, in addition to the household expenses that Trey listed in his income/expense statement, Emily testified to additional monthly household expenses of $2,122.50.[3]

Insofar as additional expenses for the two children living with Trey and Emily, the family court looked to Trey's income/expense statement that listed $25.00 for food; $60.00 for diapers; $160.00 for a special formula; $40.00 for medicine; $200.00 for "scheduled surgery (tubes), numerous medical appointments, school supplies, uniforms"; and $140.00 for dentist.[4] Thus, in his income/expense statement, Trey noted an additional $625.00 in monthly expenses the couple is obligated to expended for the children living in their household.

Emily testified that she has savings accounts for each of the children and herself, the latter of which was funded in part with an inheritance she received. Looking at the deposits into the couple's joint checking account between December 2021 and May 2022, Emily noted that she was off work for four months

---

[2] Emily testified that the monthly household supplies expense, in addition to the $25.00 that Trey set forth in his income/expenses statement, ranged between $50.00 to $85.00. We utilize $67.50, which is the average of the range (i.e., $135.00 divided in half).

[3] Although Emily stated she pays additional monthly household expenses of $700.00 for the family's health insurance premiums; $40.00 for the family's dental insurance premiums; and $20.00 for the family's vision insurance premiums, since Trey has provided no documentary evidence to the contrary, we presume these are automatic deductions from Emily's payroll check and do not factor them into the couple's additional monthly household expenses.

[4] We disregard $50.00 in clothing that Trey itemized since Emily testified to that monthly expense for herself and the couple's children.

due to her pregnancy and the subsequent birth of the couple's second child. During that time, Emily was not paid and frequently transferred money from the various savings accounts into the joint checking account to cover the monthly bills. According to Emily, she deposits all of her payroll check into the couple's joint checking account except $100.00 to $200.00, which is used to fund the savings accounts.

A review of the couple's joint checking account deposits shows that Emily's net monthly income is approximately $2,693.00.[5] According to Trey's income/expense statement, he has $810.87 in payroll deductions.[6] Therefore, Trey's net monthly income is $3,487.80. When Trey's and Emily's monthly net income is combined, the couple earns $6,180.80. Subtracting the amount of expenses set forth by Trey in his income/expense statement of $4,109.55, and the remaining household expenses of $2,122.50, to which Emily testified, the couple's total household expenses are $6,232.05. Adding the monthly expenses of $625.00 incurred solely for the couple's two children shows total monthly expenses of $6,857.05. This leaves Trey and Emily with a monthly deficit of $676.25. Thus, the family court accurately determined that Trey cannot afford to pay the basic child support obligation of $640.00. In light of the testimonial and documentary evidence, we cannot say the family court was manifestly erroneous in its conclusion that the imposition of the child support obligation under a mechanical

---

[5] Commencing on February 11, 2022, Emily began depositing her payroll checks into the account twice a month in varying amounts. Disregarding the February 11 deposit, which is substantially less than the remaining deposits, Emily deposited a total of $10,432.69 every other Friday during the ten weeks between February 25, 2022 and May 6, 2022, yielding an average of $1,043.00 per week. Multiplying that weekly average by 26 (one-half of the 52 Fridays in 2022) shows Emily's net earnings are approximately $27,118.00. Adding back $200.00 per paycheck Emily testified she deposited into savings accounts shows additionally earnings of $5,200.00. Thus, Emily's total annual net income is $32,318.00. When divided by 12 months, this establishes a monthly net income of approximately $2,693.00.

[6] The monthly deductions include payments for Social Security, Medicare, federal tax, state tax, and accident and life insurance policies.

application of the guidelines would be inequitable to Trey because of his expenses in connection with his obligation to support his other children.[7] Accordingly, we find no error in the family court's determination setting the monthly child support obligation at $575.00.

## CONTEMPT

A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice or impair the dignity of the court or respect for its authority. La. C.C.P. art. 221. Willful disobedience of any lawful judgment, order, mandate, writ, or process of the court is constructive contempt of court. See La. C.C.P. art. 224. Proceedings for contempt must be strictly construed, and the policy of our law does not favor extending their scope. The decision of whether to hold a party in contempt of court for disobeying the court's orders is within the family court's great discretion. Only if the appellate court finds an abuse of that discretion will a trial court's contempt ruling be reversed. However, the predicate factual determinations underlying the finding of civil contempt of court are reviewed under the manifest error standard of review. *Schmidt v. Schmidt*, 2018-0202 (La. App. 1st Cir. 1/3/19), 270 So.3d 804, 809.

A proceeding for contempt for refusing to obey a court's order is not designed for the benefit of the litigant, though infliction of punishment may inure

---

[7] Kailey pointed out that Trey did not include written or oral allegations pleading entitlement to a downward deviation. But Kailey did not object to either Trey's or Emily's testimony elaborating on the additional monthly expenses the couple incurs for the children of their marriage or the list set forth in Trey's income/expense statement. Accordingly, Kailey waived any objection. See La. C.C.P. art. 1154 ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading."). See also *Barges Unlimited Inc. v. Morgan City Stevedores, LLC*, 2022-0691 (La. App. 1st Cir. 2/2/23), 367 So.3d 736, 752 n.9 (although generally the failure to set forth affirmative defenses waives those defenses and bars the introduction of evidence offered in connection with an affirmative defense, where the party does not object to the introduction of such evidence, the evidence is admissible).

to the benefit of the mover in the rule. Rather, the object of a contempt proceeding is the vindication of the dignity of the court. In order to find a party guilty of constructive contempt, the family court must find that he violated the order of the court intentionally, knowingly, and purposely, without justification. *Id.*

Kailey urges the family court erred in declining to hold Trey in contempt of court for refusing to meet with a parenting coordinator. As a result, she asks this court to reverse the family court's ruling.

The record shows that on November 9, 2017, the family court signed a stipulated judgment appointing a parenting coordinator. According to the stipulated judgment, the parenting coordinator was "appointed until discharged by the Court, or by written agreement of the parties." The stipulated judgment also provided that upon appointment of the parenting coordinator the parties shall meet "at least once monthly for six months and thereafter **as needed**." (Emphasis added.)

At the hearing, Kailey admitted that Trey had "never ever, ever, ever agreed" to allow the 9-year-old child to continue participating in tournament baseball. Because the tournament baseball league required practice and out-of-town games on the weekends, the child's participation interfered with Trey's every-other-weekend physical custody of the child. Kailey acknowledged that based on the tournament baseball league's schedule for the child's participation, and Trey's inability to attend practices and games, Trey would not see their child for two to three months at a time. Kailey denied that she and the parenting coordinator had "shot down" Trey's suggestion of another baseball league the child could participate in that would not interfere with Trey's time with their child; but she agreed that on prior occasions the parenting coordinator had been unsuccessful in persuading Trey to conform to Kailey's preference that the child participate in the tournament baseball league and that the coordinator was without authority to

mediate or make Trey agree. Kailey stated, "You're right. The [parenting coordinator] did not matter."

According to Trey, he went six months without seeing the child due to the child's participation in tournament baseball. In response to Kailey's message seeking an appointment concerning the child's participation in the tournament baseball league, Trey advised the parenting coordinator that he saw no need for an appointment. He also advised the parenting coordinator he could see no reason to take off from work and schedule an appointment since nothing was going to change.

Implicit in the family court's conclusion that Trey was not in contempt is a factual finding that a meeting with the parenting coordinator was not needed. Inasmuch as more than six months had lapsed since the appointment of the parenting coordinator and, thus, under the terms of the November 9, 2017 stipulated judgment was required only "as needed," the collective testimony of Kailey and Trey supports the finding that a meeting with the parenting coordinator was not needed. Thus, a reasonable factual basis exists for the family court's conclusion that Trey did not violate the stipulated judgment intentionally, knowingly, and purposely, without justification. As such, the family court did not abuse its discretion in declining to hold Trey in contempt.[8]

## DECREE

For these reasons, the family court's judgment is affirmed. Appeal costs are assessed against plaintiff-appellant, Kailey Gerage.

**AFFIRMED.**

---

[8] Since appellate courts review judgments, not the reasons for judgment, see *Beem v. Beem*, 2020-0897 (La. App. 1st Cir. 4/20/21), 324 So.3d 682, 687, and because the family court's conclusion is supported by the record, we find it unnecessary to address the issue of whether the stipulated judgment ordering the appointment of a parenting coordinator expired pursuant to La. R.S. 9:358.1 and pretermit such a discussion.